## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**AMA SYSTEMS, LLC, et al.,**

    *Plaintiffs*,

    **v.**

**3B TECH, INC., et al.,**

    *Defendants*.

\*  

\*

\*

\*

\*

\*

**Case No. 1:21-cv-01472-JRR**

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs AMA Systems, LLC ("AMA") and Bluemar Promotions, LLC ("Bluemar") bring this action against Defendants 3B Tech, Inc. ("3B Tech"), Pro-Com Products, Inc. ("Pro-Com"), Salusen, Inc. ("Salusen"), Jian Qing "Johnny" Zhu, Brett Barbour, Michael Johnson, BCO Lab, Inc. ("BCO"), and Zake International, Inc. ("Zake USA") (collectively, "Defendants) for conspiracy to manufacture, market, and sell fraudulently certified personal protective equipment ("PPE") for protection against COVID-19. (ECF No. 71; "Second Amended Complaint.") Pending before the court is Defendants' Rule 12(b)(6) Motion to Dismiss. (ECF No. 86; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND

### A.    Factual Background[1]

A comprehensive factual background is set forth in the court's memorandum opinion of June 14, 2022, at ECF No. 39.  For economy of time and space, the court relays here only those facts pertinent to the Motion.

Plaintiff AMA is a "Concept-to-Market" Maryland limited liability company that "provides analysis and deployment services for products and services."  (ECF No. 71 ¶ 19.) Plaintiff Bluemar is a New Hampshire limited liability company that provides "logistics and distribution of products, among other services."  *Id.* ¶ 20.  Defendant 3B Tech is an Indiana-based importer, distributor, and seller of various products, including products manufactured in China.  *Id.* ¶ 22.  Defendant Pro-Com is a California-based importer and distributor specializing in consumer electronics and packaged goods.  *Id.* ¶ 23.  Defendant Salusen is an Indiana-based online retailer of PPE.  *Id.* ¶ 26.  Defendant Zake USA is an Indiana corporation with the same address as 3B Tech and Salusen, and offers business to business distribution with Pro-Com.  (ECF No. 71 ¶ 37.) Defendant BCO Lab is the successor in interest to 3B Tech and does business under the name "Better Choice Online."  *Id.* ¶¶ 40, 41.

Defendant Zhu is the incorporator, president, owner, and former CEO of 3B Tech; an owner of Pro-Com, Salusen, and non-party Zake China; he also owns a portion of Zake USA.  (ECF No. 71 ¶¶ 22-23, 26, 37.)    Zhu is also an owner of non-party Shenzhen Centurion Technology Company ("SCT"), a manufacturing plant in China that produces healthcare supplies, including protective face masks.  *Id.* ¶ 21.  Defendant Barbour is the vice president, registered agent, and former interim CEO of 3B Tech; an owner of Pro-Com; and an owner, as well as the incorporator,

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Second Amended Complaint.  (ECF No. 71.)

president, and resident agent, of Salusen.  *Id.* ¶¶ 26, 31.  Defendant Johnson is the senior vice president of Pro-Com and may have a role with 3B Tech and/or Salusen.  *Id.* ¶¶ 33, 36.  As relevant to Plaintiffs' claims, SCT manufactured face masks with the Salusen label/brand in China.  *Id.* ¶¶ 21, 44.  The SCT-manufactured masks were imported to the United States for distribution by Pro-Com and/or Zake USA, distributed by Pro-Com to Salusen and/or 3B Tech, and then sold and distributed by 3B Tech to Plaintiffs and others for re-sale to third-party end users.  *Id.* ¶¶ 21–34, 44.

Beginning in March 2020, AMA began contacting business connections to determine its ability to supply PPE and eventually reached out to Bluemar to inquire whether Bluemar could secure PPE, including face masks.  (ECF No. 71 ¶ 83.)  In turn, Bluemar reached out to 3B Tech to purchase certified PPE.  *Id.* ¶ 84.  On April 6, 2020, Bluemar placed a purchase order for 50,000 "K95 Masks—FDA Approved" at a cost of $100,000.  *Id.* ¶ 87.  On April 15, 2020, Bluemar placed a second purchase order for 250,000 face masks at a cost of $500,000.  *Id.* ¶ 90.  On April 29, 2020, Bluemar placed a third purchase order for 500,000 face masks for $1,000,000.  *Id.* ¶ 101.  Between April 7 and May 21, 2020, Bluemar sent various amounts of money by wire to 3B Tech for purchase of the masks.  *Id.* ¶ 110.  Plaintiffs allege that between March and June 2020, Defendants made multiple false representations to Plaintiffs regarding the masks.  *See generally* ECF No. 71 ¶¶ 129-241.  Plaintiffs also allege that Defendants repeatedly altered and concealed independent testing reports that confirmed the counterfeit nature of the masks.  *Id.* ¶ 80.

Plaintiffs allege that in April or May 2020, other non-parties, specifically, Vonnic, Inc., KC Lin, SP Richards Company, MANCON, and Pike Systems, Inc., purchased and received non-conforming counterfeit masks from Defendants.  (ECF No. 71 ¶¶ 63-66.)  SP Richards Company and MANCON resold the masks to their customers.  *Id.* ¶ 272.  Plaintiffs allege that on April 30,

2020, Johnson and Pro-Com sent SP Richards the altered testing reports that were provided to Plaintiffs. *Id.* ¶ 270. On May 29, 2020, Pike Systems also received a copy of the altered testing report. *Id.* ¶ 279.

Plaintiffs allege that throughout 2020 and 2021, 3B Tech sold the non-conforming face masks through its Amazon storefront. (ECF No. 71 ¶ 284.) In 2022, Pro-Com circulated the May 27, 2020, altered testing report to repeat and prospective customers, including SP Richards Company. *Id.* ¶ 285. In 2021 and early 2022, Pro-Com sold additional face masks to SP Richards Company. *Id.* ¶ 286. Plaintiffs allege that Defendants continue to market and sell the non-conforming KN95 face masks through various websites. *Id.* ¶¶ 67, 68, 72, 288-290.

### B.   Procedural Background

On June 6, 2021, Plaintiffs filed this action. (ECF No. 1.) On August 31, 2021, Plaintiffs filed an Amended Complaint.[2] (ECF No. 33.) On December 6, 2022, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which was granted on January 5, 2023. (ECF No. 70.) The Second Amended Complaint added two Defendants, BCO and Zake USA, and an additional claim under the New Hampshire Consumer Protection Act ("NHCPA").

The Second Amended Complaint sets forth six counts: (I) Civil Violation of the RICO, 18 U.S.C. § 1962(c), against all Defendants; (II) Civil Violation of RICO, 18 U.S.C. § 1962(d), By Conspiring to Violate 18 U.S.C. § 1962(c) against all Defendants; (III) Fraudulent Misrepresentation against all Defendants; (IV) Breach of Contract against 3B Tech and BCO Lab;

---

[2] The Amended Complaint set forth five counts: (1) Civil Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (II) Civil Violation of RICO, 18 U.S.C. § 1962(d), By Conspiring to Violate 18 U.S.C. § 1962(c); (III) Fraudulent Misrepresentation; (IV) Breach of Contract against 3B Tech; and (V) Breach of Contract against 3B Tech, Salusen, Zhu, and Barbour. (ECF No. 33.) On September 28, 2021, Defendants filed a motion to dismiss, (ECF No. 36), the RICO claims—Counts I and II—of the Amended Complaint, which was granted on June 14, 2022. (ECF No. 39.) In her Opinion, Judge Boardman dismissed Count I on the basis that Plaintiffs failed to allege a pattern of racketeering activity, and therefore, the associated RICO conspiracy claim—Count II—was also dismissed.

(V) Breach of Contract against 3B Tech, Salusen, Zhu, Barbour, and BCO Lab; and (VI) Violation of the NHCPA, N.H. Rev. Stat. §§ 358A:1 *et seq.* against all Defendants.  (ECF No. 71.)  The prayer for relief seeks: (i) damages in an amount no less than $1,000,000.00 including compensatory, consequential, exemplary, treble, and punitive damages; (ii) attorneys' fees and costs; (iii) interest; and (iv) any other relief afforded by law.  *Id.* at 82.

On January 31, 2023, Defendants filed the Motion, which seeks dismissal of the Second Amended Complaint on various grounds: (1) the RICO claims—Counts I and II—fail to allege a pattern of racketeering activity; (2) the fraudulent misrepresentation claim—Count III—fails to satisfy Rule 9's heightened pleading standard; (3) the breach of contract claim—Count V—fails to allege that the individual Defendants "have acted beyond anything other than mere agents at all times relevant;" and (4) the NHCPA claim—Count VI—fails to allege that Defendants' conduct falls within the scope of the NHCPA.  (ECF No. 86 at 7-16.)

## II.     LEGAL STANDARDS

### A.     <u>Federal Rule of Civil Procedure 12(b)(6)</u>

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief."  *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."   *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).   "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient."   *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).   "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief."   *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### B.      Federal Rule of Civil Procedure 9(b)

"Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'"   *Ashcroft*, 556 U.S. at 686.   A plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois*, 3 F. Supp. 3d at 435 (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)). "Claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened standard of Rule 9(b)." *Layani v. Ouazana*, No. 20-420, 2021 U.S. Dist. LEXIS 39894, at *61 (D. Md. Mar. 3, 2021); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting FED. R. CIV. P. 9(b) and holding that "the MCPA claim, which sounds in fraud, is subject to the

heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud'").  Rule 9(b) serves four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Id.*; *see St. Michael's Media, Inc. v. Mayor and City Council of Baltimore*, No. ELH-21-2337, 2022 WL 137866, at *17 (D. Md. Jan. 14, 2022) (noting that "Rule 9(b) aims 'to eliminate fraud actions in which all the facts are learned after discovery'").

## III.    ANALYSIS

### A.    <u>Civil RICO Claims – Counts I and II</u>

Plaintiffs first count of the Second Amended Complaint alleges that Defendants violated 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  In the second count, Plaintiffs assert that Defendants conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsection

(a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

### 1.    Count I - 18 U.S.C. § 1962(c)

To state a violation of 18 U.S.C. § 1962(c), a plaintiff must plausibly allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[3] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Defendants argue that Plaintiffs fail to adequately allege a pattern of racketeering.  (ECF No. 86 at 7.)

The RICO statute requires "at least two" acts of racketeering activity within a 10-year period to establish a pattern of racketeering. 18 U.S.C. §§ 1961(5), 1962(c).  "Section 1961(1) defines 'racketeering activity' as an act chargeable under any of the individual state and federal crimes listed in § 1961(1)." *Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 552 (D. Md. 1998).  Relevant here, racketeering activity includes mail and wire fraud.[4]  18 U.S.C. § 1961(1)(B).

To establish the necessary pattern, a plaintiff must show (1) a relationship between the predicate acts and (2) that they "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Stated differently, defendants may be "guilty of RICO violations if they commit two or more acts of mail or wire fraud and the acts are

---

[3] In granting the Motion to Dismiss at ECF No. 36, the Honorable Deborah Boardman concluded that Plaintiffs adequately alleged an enterprise and racketeering activity in the form of mail and wire fraud.  (ECF No. 39.)  Judge Boardman also concluded that Plaintiffs' allegations that Defendants committed Maryland statutory theft crimes did not qualify as predicate acts for purposes of racketeering.  *Id.*  In the Second Amended Complaint, Plaintiffs do not allege any additional facts to alter that analysis.  The court therefore does not revisit the issue.

[4] The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme.  *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996). Wire fraud is similar, except that "wire, radio, or television," rather than the mails, provides the means to further the fraud. 18 U.S.C. § 1343.  Wire usage also includes the internet and email. *Brasko v. Howard Bank*, No. SAG-20-3489, 2021 WL 1662464, at *5 (D. Md. Apr. 27, 2021).  The mail and wire fraud allegations must state with particularity "the fraudulent acts that form the alleged pattern of racketeering activity" in accordance with Rule 9(b).  *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir.1989).  "[T]he mailings or wirings do not have to contain the misrepresentations that defrauded the plaintiff, but merely be in furtherance of the fraudulent, material misrepresentation upon which the plaintiff relied to his detriment and may include mailings and wirings directed at nonparties." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009).  As stated above, *supra* at n.3, the parties do not raise new arguments regarding the alleged predicate activities, and the court agrees with Judge Boardman's analysis and conclusion that Plaintiffs adequately allege predicate activities in the form of mail and wire fraud.

sufficiently related and sufficiently continuous." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).

"Where a fraud claim is asserted as a predicate act for a civil RICO violation, Rule 9(b)'s particularity requirement applies." *Ekstrom v. Congressional Bank*, No. ELH-20-1501, 2020 WL 6565251, at *19 (D. Md. Nov. 9, 2020).   In analyzing a RICO claim, the Honorable George L. Russell, III, of this court, succinctly explained:

> In evaluating the viability of a RICO claim, the United States Court of Appeals for the Fourth Circuit instructs courts to differentiate between "garden-variety fraud claims," which do not amount to a RICO violation, and "cases involving a more serious scope of activity." *See Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). Courts have "limit[ed] [RICO's] severe penalties to offenders engaged in ongoing criminal activity, rather than isolated wrongdoers." *Ekstrom*, 2020 WL 6565251, at *17 (quoting *Friedler v. Cole*, No. CCB-04-1983, 2005 WL 465089, at *7 (D. Md. Feb. 28, 2005)). Indeed, RICO "is reserved for conduct whose scope and persistence pose a special threat to social well-being." *Id.* (quoting *Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 714 (D. Md. 2008)). Thus, the Court "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

*Compass Marketing, Inc. v. Flywheel Digital, LLC*, No. GLR-22-379, 2023 WL 2213687, at *10 (D. Md. Feb. 24, 2023).   Additionally, in considering RICO claims on predicate acts of mail and wire fraud, the Fourth Circuit exercises caution:

> [W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud because [i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity. We have reserved RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.

*Al-Abood*, 217 F.3d at 238 (internal citations and quotation marks omitted).

The precise issue is whether Plaintiffs' allegations of mail and wire fraud satisfy the pattern requirement. The parties do not dispute that the predicate acts of mail and wire fraud are related. Defendants' arguments focus only on the continuity requirement—whether the alleged acts of mail and wire fraud "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). In *Menasco, Inc. v. Wasserman*, the Fourth Circuit explained the continuity prong:

> In articulating the continuity plus relationship test, the *H.J. Inc.* Court endorsed a commonsensical, fact-specific approach to the pattern requirement. Accordingly, the *H.J. Inc.* Court rejected, as had this court and most other circuits, the rigid notion that predicate acts form a pattern only when they are part of separate illegal schemes. The Court observed that multiple predicates within a single scheme may indeed constitute criminal activities which have long-term and widespread consequences—the very acts RICO was intended to prohibit. Predicate acts which arise under a single scheme, then, may be a pattern for RICO purposes if they are continuous and related. Again, however, the test is commonsensical, not formulaic. Thus, the existence of a single scheme alone, while not dispositive, can be relevant to the continuity inquiry.

886 F.2d 681, 684 (4th Cir. 1989) (internal citations and quotation marks omitted).

### i.     *Closed-Ended Continuity*

Defendants argue that Plaintiffs fail to allege closed-ended continuity, because although Plaintiffs allege additional sales, they fail to allege facts to suggest that the alleged scheme lasted longer than three months (April 2020 to June 2020). (ECF No. 86 at 11.)

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242

(1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* "[I]t is clear that predicate acts of racketeering activity must be part of a prolonged criminal endeavor." *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002).

In analyzing continuity, "[a] careful assessment must be made of 'the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.'" *Whitney, Bradley & Brown, Inc. v. Kammermann,* 436 F. App'x 257, 259 (4th Cir. 2011) (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986) and *citing HMK Corp. v. Walsey*, 828 F.2d 1071, 1073 (4th Cir. 1987)).

In *Brandenburg v. Seidel*, the Fourth Circuit explained:

> These factors are not exclusive, and no one of them is necessarily determinative; instead, a carefully considered judgment taking into account all the facts and circumstances of the particular case—with special attention to the context in which the predicate acts occur— is required. The mere fact that the predicate acts alleged can be characterized as part of the same overall scheme does not automatically prevent their constituting a RICO pattern. Similarly, the fact that a scheme to defraud requires several acts of mail or wire fraud in order to accomplish its objective does not automatically make it a RICO pattern. With us, the pattern inquiry remains a flexible one whose ultimate focus must always be on whether the related predicate acts indicate ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being.

859 F.2d 1179, 1185 (4th Cir. 1988) (internal citations and quotation marks omitted).

The court finds instructive *Layani v. Ouazana*, No. 20-00420-SAG, 2022 WL 294286 (D. Md. Feb. 1, 2022). There, the plaintiffs' original complaint was dismissed because it failed to allege that the defendants conduct rose above "garden variety fraud to pose a threat to social well-being." *Id.* at *4. The court, however, found that the new allegations set forth in an amended

complaint sufficiently alleged a close-ending racketeering pattern.  *Id.*   The *Layani* court explained:

> The [First Amended Complaint ("FAC")] clarifies the extensive scope of Defendants' alleged conduct, consisting of 392 transactions in which Defendants systematically targeted vulnerable individuals, such as retirees living some distance from Baltimore with limited English skills. While, to be sure, the predicate offenses are mail and wire fraud, the nature and scope of the alleged conduct is far from routine, as modified by the new allegations. First, the FAC adds some particularity about the total number of victims and the identities and descriptions of some additional victims. Second, the FAC describes in detail Defendants' efforts to suppress the participation of other victims in this litigation, including their use of deception, threats, and a purported requirement to seek prior authorization from Jewish religious court. Third, the number and variety of the fraudulent acts alleged, over many years, is sufficiently pervasive to remove this case from the context of "garden variety fraud." A prior federal lawsuit brought by another victim entity, Jet Properties, LLC, did not deter the continued conduct. Fourth, Defendants' conduct poses a "special threat to social well-being" due to the nature of the victims allegedly solicited – retirees on fixed incomes for whom significant financial losses imperil their ability to pay basic living expenses.

2022 WL 294286, at *4 (internal citations omitted).

In the instant case, Plaintiffs fail to allege facts to suggest that the predicate acts of mail and wire fraud are "part of a prolonged criminal endeavor."  *See ePlus*, *supra*; *see H.J., Inc.*, 492 U.S. at 242 (noting that "Congress was concerned in RICO with long-term criminal conduct"); *Layani*, 2022 WL 294286, at *4 (finding that FAC sufficiently stated a claim where new allegations contained a "number and variety of fraudulent acts . . . over many years").  Plaintiffs' detailed allegations suggest a single scheme that began and concluded within six months (late March 2020 to August 2020).  Further, Plaintiffs allege that most of the predicate activity occurred before July 2020, and the last wire transfer from Bluemar to 3B Tech occurred on May 21, 2020.  Additionally, Defendants (primarily Zhu, Barbour, and Johnson) directed the substantive

12

misrepresentations about certification and test results to Plaintiffs (primarily Bluemar).  While Plaintiffs add allegations as to four other non-party customers who bought the non-conforming face masks in April or May of 2020,[5] the allegations do not lengthen the duration of the alleged scheme to suggest that it extended over a substantial period of time.  Instead, Plaintiffs' allegations bolster the conclusion that the scheme lasted no more than six months (March 2020 to August 2020).  *See H.J. Inc.*, 492 U.S. at 242 (holding that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.").

        Like the plaintiffs in *Layani*, Plaintiffs add some particularity about "the identities and descriptions of some additional victims."  2022 WL 294286, at *4.  Specifically, Plaintiffs allege that "Vonnic, Inc., KC Lin, SP Richards, and MANCON purchased fraudulently certified PPE from Defendants, and have thus been harmed," however, the allegations are vague as to how, or if, Defendants harmed these companies through predicate acts.  *See Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 274 (4th Cir. 2010) (finding that while the plaintiffs alleged names and addresses of individuals who may have been harmed by the alleged scheme, the plaintiffs failed to satisfy the continuity requirement because the "[c]omplaint summarily draws the conclusion that other persons were harmed" by the alleged scheme); *but see Layani*, 2022 WL 294286, at *5 (concluding that the plaintiffs stated a claim where they "cited to direct quotations from several of the victims establishing misconduct in their cases as well, and make reference to other victims who would have participated in this litigation absent [the] [d]efendants representations . . . .").  Plaintiffs allege only one specific date (April 21, 2020) on which two of

---

[5] Plaintiffs also allege that "Pike Systems" purchased the KN95 face masks; however, in contrast to the other customers, Plaintiffs do not allege that the Pike Systems face masks were manufactured by SCT or bore the same Lot and UPC code of those sold to Plaintiffs.  (ECF No. 71 ¶ 278.)

these customers purchased the non-conforming face masks.  (ECF No. 71 ¶ 267.)  Plaintiffs do not allege that (or whether) these additional customers wired payments for the masks, the price they paid, or whether (and how) these companies were injured.

Plaintiffs further make general conclusory allegations that Defendants misrepresented to these additional companies that the face masks were KN95 like they misrepresented to Plaintiffs. (ECF No. 71 ¶¶ 267, 271.)  Indeed, there are no allegations of substantive communications between other companies and Defendants.  *See Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 WL 2572474, at *18 (D. Md. Sept. 5, 2006) (dismissing RICO claims for failure to allege a pattern of racketeering activity because "[g]eneral and conclusory assertions that [d]efendants defrauded others through similar acts are insufficient to establish a pattern of racketeering activity . . . . [p]laintiffs must allege specific acts of mail and wire fraud against [other customers]").

In addition to being fatally vague, Plaintiffs' allegations, even if true, are insufficient to demonstrate closed continuity.  The fact that the scheme may have victimized additional companies is not sufficient to sustain a pattern of racketeering.  *See ePLus Technology, Inc. v. Aboud*, 313 F.3d 165, 182 (4th Cir. 2002) (noting that the alleged scheme lasted only a few months and "the fact that the [] scheme and its underlying conspiracy victimized numerous creditors does not necessarily establish the requisite pattern of racketeering"); *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (finding that the plaintiffs failed to satisfy the continuity requirement where the alleged scheme "to defraud potential investors and plaintiffs by misleading them into believing the that [the company] was thriving, financially successful business" occurred over two years); *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154 (4th Cir. 1987) (declining to find a pattern of racketeering activity where the plaintiffs' RICO claim was

based on an allegedly misleading prospectus that reached ten investors via the mail); *Whitney Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 262 (4th Cir. 2011) (finding that incidents involving six victims and 14 transactions over eight months is insufficient to state a civil RICO claim); *Ekstorm*, 2020 WL 6565251, at *23 (finding the racketeering pattern requirement satisfied where "the [c]omplaint alleges that the predicate acts—the wire transfers and over 100,000 mail solicitations—spanned a period of at least eighteen months"); *Capital Lighting and Supply, LLC v. Wirtz*, No. JKB-17-3765, 2018 WL 3970469, at *7 (D. Md. Aug. 20, 2018) (noting that the alleged scheme's "four-year duration represents the type of long-term criminal conduct that RICO was designed to target"); *Morley v. Cohen*, 888 F.2d 1006, 1010 (4th Cir. 1989) (concluding that the five-year duration of fraudulent conduct established the requisite continuity).

Plaintiffs allege a single six-month scheme, a limited number of victims, with few perpetrators, and one injury to Plaintiffs. Defendants directed the scheme and communicated substantively with Plaintiffs, primarily Bluemar, through acts of mail and wire fraud, (ECF No. 71 ¶ 322); Plaintiffs placed three orders in April 2020, and made the last wire transfer to 3B Tech on May 21, 2020. Allegations that Defendants communicated with other victims through acts of mail and wire fraud are far too vague to suffice. Accordingly, the allegations fail to suggest repeated conduct that extended "over a substantial period of time." *H.J. Inc.*, 492 U.S. at 241-42. Thus, Plaintiffs do not allege a pattern of racketeering through close-ended continuity.

### b.    *Open-Ended Continuity*

Defendants argue that Plaintiffs fail to allege open-ended continuity because the "allegations fail to identify any concrete injury suffered by a non-plaintiff putative victim of any ongoing criminal or fraudulent activity." (ECF No. 86 at 13.)

To show an open-ended pattern, a plaintiff must allege a scheme "that by its nature projects

into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "This form of continuity, focusing on the possibility of future conduct . . . can be established by, for example, evidence that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Starr v. VSL Pharmaceuticals, Inc.*, 509 F. Supp. 3d 417, 438 (D. Md. 2020) (quoting *H.J. Inc.*, 492 U.S. at 241-42). In *Starr v. VSL Pharmaceuticals, Inc.*, the court held that the plaintiffs adequately alleged an "open-ended scheme" where "they describe[d] a multi-year enterprise involving a substantial number of false and misleading marketing and advertising materials disseminated through a nationwide distribution and sales network that victimized numerous individuals across the United States." *Id.* at 441. The *Starr* court noted that the plaintiffs had "alleged a scheme whose victims generally have health conditions for which they had come to rely on a particular product, such that it had, at a minimum, the potential to adversely impact the health of a significant number of individuals." *Id.* Accordingly, the alleged scheme "has the kind of 'scope and persistence to pose a special threat to social well-being' that places the alleged pattern of racketeering beyond the ordinary fraud claims consisting of private economic disputes that do not qualify as RICO claims." *Id.* (quoting *Brandenburg*, 859 F.2d at 1185); *see Layani*, 2022 WL 294286, at *4 (concluding that the defendants' "conduct poses a 'special threat to social well-being' due to the nature of the victims allegedly solicited – retirees on fixed incomes whom significant financial losses imperil their ability to pay basic living expenses").

The court finds *Menasco, Inc. v. Wasserman* instructive. 886 F.2d 681 (4th Cir. 1989). There, the Fourth Circuit found that, while the plaintiffs alleged that the defendants had committed fraudulent acts against various individuals, the defendants' actions did not suggest "a distinct threat of long-term racketeering activity, either implicit or explicit." *Menasco*, 886 F.2d at 684 (quoting *H.J. Inc.*, 492 U.S. at 242). The court explained:

> Plaintiffs contend that [defendants'] fraudulent acts constitute a regular way of conducting [their] ongoing legitimate business, thus threatening future continuance. They rely on two sets of allegations to establish defendants' ongoing scheme: the existence of dummy corporations designed to divert Sounion's fraudulent assets, and the fact that Wasserman committed fraudulent acts against various individuals. These allegations lack the specificity needed to show a distinct threat of continuing racketeering activity. The complaint fails to supply any details regarding either the operation of the dummy corporations or the identity or activity of the other persons purportedly defrauded by the defendant. Plaintiffs' conclusory allegations fail to satisfy Fed. R. Civ. P. 9(b)'s requirement that averments of fraud be stated with particularity. They therefore cannot be relied upon to show a continuing pattern of fraudulent acts.

*Id.* (internal citations and quotations omitted).

While Plaintiffs maintain that "Defendants continue to market and sell the counterfeit masks online," Plaintiffs' allegations as to Defendants' racketeering activity directed toward other victims and ongoing sales are too vague and insubstantial.  Plaintiffs allege:

> 3B Tech and Pro-Com have advertised distributing their products, including facemasks, through various national channels, such as Home Depot, Amazon.com, and Target.
>
> Upon information and belief, 3B Tech and Pro-Com have sold the same nonconforming KN95 face masks, manufactured by SCT, Lot 202004010, UPC Code 6552955444109 that were sold to Plaintiffs, to Home Depot and Target.
>
> Throughout 2020, 3B Tech sold non-conforming KN95 face masks, manufactured by SCT, Lot 202004010, UPC Code 6552955444109, to customers through its Amazon.com storefront, Better Choice Online. These are the same masks 3B Tech sold to Plaintiffs. Upon information and belief, 3B Tech also sold these non-conforming KN95 face masks on Amazon.com to customers through 2021.
>
> Defendants' violations have directly, illegally, and proximately injured Plaintiffs and other market participants. Defendants have or are in the process of selling at least 5 million (or 10 million) units of fraudulently certified PPE to persons and entities throughout the United States. For example, Vonnic, Inc., KC Lin, SP Richards Company and MANCON purchased fraudulently certified PPE

> from Defendants and have thus been harmed. Other entities, including Monoprice, have purchased Defendants' fraudulently certified PPE through a reseller, and has also been harmed. First Century Sales, LLC is either an agent of Pro-Com, Zake USA and 3B Tech or a reseller of the fraudulently certified PPE from Defendants, as they have sold the subject face masks. If First Century Sales, LLC is a reseller, it has also been harmed. Other entities harmed by Defendants' conduct include hospitals and government entities—all of which Defendants claimed to have sold PPE to and which may have purchased the fraudulently certified products described herein.

> Plaintiffs anticipate that additional discovery of Defendants and third-parties will reveal the identity of numerous other victims who purchased Defendants' fraudulently certified PPE based on Defendants' fraudulent misrepresentations.

> Plaintiffs anticipate that additional discovery of Defendants and third-parties will reveal that Defendants continued to sell the non-conforming KN95 face masks to others despite the June 1 and 22, 2020 SGS test results which revealed that the face masks manufactured by SCT and being sold by Defendants did not meet KN95 performance or filtration standards.

(ECF No. 71 ¶¶ 282-84, 342-44.)

Although Plaintiffs allege Defendants continued (and continue) to advertise and sell the non-conforming masks beyond April and May of 2020, Plaintiffs fail to allege adequate details regarding the "identity or activity of the other persons purportedly defrauded by the defendant." *Menasco*, 886 F.2d at 684; *see Rita Bhambhani, LLC v. Neuraxis, Inc.*, No. RDB-22-1732, 2023 WL 3688336, at *10 (D. Md. May 25, 2023) (finding that the alleged scheme "has insufficient scope and reach to be 'part of a prolonged criminal endeavor'" despite allegations that the devices were marketed and sold nationwide); *Orteck Int'l Inc.*, 2006 WL 2572474 (dismissing civil RICO claims for failure to allege a pattern of racketeering activity because "[g]eneral and conclusory assertions that [d]efendants defrauded others through similar acts are insufficient to establish a pattern of racketeering activity . . . . Plaintiffs must allege specific acts of mail and wire fraud

against [other customers]"); *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 274 (4th Cir. 2010) (concluding that the plaintiffs failed "to plead with particularity that any specific person was defrauded other [than] themselves, much less give any particulars of the fraud" and "[t]herefore, '[t]hese allegations lack the specificity needed to show a 'distinct' threat of continuing racketeering activity'") (quoting *Menasco*, 886 F.2d at 684); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (finding that the plaintiff "failed to plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)" where "the allegations describing the operative events failed to mention any use of the mails or telephones"). Further, Plaintiffs fail to allege that the scheme was a "multi-year enterprise . . . that victimized numerous individuals across the United States." *See Starr*, *supra*.   As the court explained in *Ritu Bhambhani*, "[t]housands of consumers bring claims in every state challenging misrepresentations made by the sellers of products in their marketing campaigns.   While such fraud may be serious, it is not 'the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties.'"   2023 WL 3688336, at *11 (quoting *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

Moreover, as set forth earlier, while Plaintiffs allege instances of mail and wire fraud, the court is "cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice."  *Al-Abood*, 217 F.3d at 238 (internal citations omitted).  The vague allegations of activity beyond 2020 are insufficient to suggest that the conduct is ongoing or the presence of a "distinct threat of continuing racketeering activity."  *See Menasco*, *supra*.  Instead, Plaintiffs' new allegations galvanize the court's conclusion that the alleged scheme was of limited duration with too few

victims to state a civil RICO claim.[6]

RICO liability is reserved for repeated conduct "extending over a substantial period of time," *H.J.*, 492 U.S. at 230, or "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Zepkin*, 812 F.2d at 155.  Essentially, Plaintiffs allege that Defendants misrepresented that the KN95 masks were certified, misrepresented or failed to disclose material facts, and breached their contract with Plaintiffs.  The alleged scheme is "not sufficiently outside the heartland of fraud cases to warrant RICO treatment."  *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *see Foster*, 363 F. App'x at 274 (holding that allegations of "multiple instances of mail and wire fraud over the court of an arguably substantial period of time" was nonetheless "garden-variety fraud" and not a scheme "whose scope and persistence set [it] above routine"); *Capital Lighting and Supply, LLC v. Wirtz*, 2018 WL 3970469, at *9 (D. Md. Aug. 20, 2018) (concluding that "the [c]omplaint alleges a pattern of racketeering activity: Specifically, a years' long endeavor by multiple individuals and companies, using multiple schemes to infiltrate, corrupt, and profit from an otherwise legitimate business"); *Brasko v. Howard Bank*, No. 20-cv-03489-SAG, 2022 WL 951771, at *6 (D. Md. Apr. 27, 2021) (concluding that "the huge volume of mailings soliciting new borrowers across the country, as well as the lengthy time period over which these mailings were sent, leads the Court to conclude that such mailings are more than mere 'garden-variety fraud claims' and are mailings that constitute 'a more serious scope of activity'") (quoting *Al-Abood*, 217 F.3d at 238).

Accordingly, Plaintiffs fail to allege a pattern of racketeering through open-ended

---

[6] Plaintiffs provide detailed allegations involving the alleged scheme between Plaintiffs and Defendants in March 2020 to August 2020 (primarily, before July 2020).  But even assuming it true that Defendant Zhu admitted the face masks were counterfeit in September and October 2020, ECF No. 71 ¶¶ 293-94, Plaintiffs' allegations regarding additional sales of the non-conforming face masks and circulation of the altered test report in 2021 and early 2022 are simply too generalized.  *Id.* ¶¶ 286-87.

continuity.  The Motion will be granted as to Count I.

### 2.      Count II - 18 U.S.C. § 1962(d)

Defendants also move to dismiss Plaintiffs' RICO conspiracy claim—Count II. Because Plaintiffs fail to state a plausible civil RICO violation, the associated RICO conspiracy claim is dismissed.  The Motion will be granted as to Count II.


### B.      <u>Fraud – Count III</u>

Defendants argue that Plaintiffs' fraudulent misrepresentation claim fails to comply with Rule 9(b).  (ECF No. 86 at 15.)  In their Reply, Defendants argue that Plaintiffs fail to state a claim and that Defendants Zhu, Barbour, and John may not be held personally liable for fraud.[7]  (ECF No. 93 at 11.)

"Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Topline Solutions, Inc. v. Sandler Sys, Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *32 (D. Md. May 8, 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)).  In accordance with Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois v. Live Nation Entertainment Inc.*, 3 F. Supp. 3d 423, 435 (D. Md. 2014) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)). "Rule 9(b) is 'less strictly applied with respect to claims of fraud by concealment' or omission of material facts, as opposed to affirmative misrepresentations, because 'an omission cannot be described in

---

[7] "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."  *Clawson v. FedEx Ground Packaging Sys.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).

terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Hebbeler*, 2018 WL 3818855, at *6 (quoting *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997).

Plaintiffs allege sufficient detail to meet the heightened pleading standard for Rule 9(b). The allegations in the Second Amended Complaint provide adequate detail with regard to the sale to Plaintiffs of the fraudulently certified face masks that began in March 2020. (ECF No. 71 ¶ 83.) Plaintiffs allege the dates, senders, recipients, and contents of the false representations. *Id.* ¶¶ 87-89, 93-96, 121-26, 132-33, 135, 143, 153, 156, 162, 164, 172, 174-75, 184, 186, 189, 200, 207, 210, 240, 246, 360. The alleged false representations were made over phone, email, and Skype. *See generally id.* Plaintiffs allege that such representations were made by Zhu and Barbour, in their individual and/or representative capacities on behalf of 3B Tech, Salusen, and/or Pro-Com. *Id.* ¶¶ 361-62. Plaintiffs further allege material misrepresentations and omissions by Johnson. *Id.* ¶¶ 222, 237, 269, 347-75. Accordingly, Plaintiffs' fraud allegations are sufficient to withstand Rule 9(b).

As set forth in footnote 7, *supra*, Defendants improperly raise Rule 12(b)(6) arguments as to Count III in their Reply. Because the court concludes these arguments are non-meritorious and therefore do not unfairly prejudice Plaintiffs, the court will briefly explain why. A fraudulent misrepresentation claim requires a plaintiff to allege:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994).

Plaintiffs allege:

> Defendants knowingly made false and fraudulent misrepresentations of material facts to Plaintiffs as described in this Second Amended Complaint . . .
>
> Defendants made these misrepresentations as described herein with the intent to induce Plaintiffs to act in reliance, *i.e.*, purchasing and accepting the subject face masks.
>
> Plaintiffs acted in reasonable reliance of Defendants' false and fraudulent misrepresentations in deciding to purchase and accept the subject face masks and suffered pecuniary damage as a result.
>
> 3B Tech, Barbour, Salusen, Pro-Com, Zake USA and/or Johnson altered these reports with the intent to deceive Plaintiffs, and that Plaintiffs would rely upon these altered reports in purchasing and accepting Defendants' face masks.
>
> Johnson and Pro-Com filed and/or applied for the necessary certifications, registrations and tests on behalf of Defendants.
>
> Johnson and/or Pro-Com made false and fraudulent misrepresentations of material facts when they informed 3B Tech, Barbour, Zhu and Salusen that the subject SCT face masks were FDA certified. Those representations were false and Johnson and/or Pro-Com made those representations with the intent to deceive Plaintiffs, knowing that 3B Tech, Barbour, Zhu and Salusen would be providing that information to Plaintiffs, and that Plaintiffs would rely upon that information in purchasing and accepting Defendants' face masks.
>
> Plaintiffs relied on these misrepresentations, to their detriment, and as a result, have incurred and continue to incur damages.

(ECF No. 71 ¶¶ 360, 365, 366, 370-72, 376.)  Construed in the light most favorable to Plaintiffs, the Second Amended Complaint states a fraudulent misrepresentation claim.

Defendants also improperly raise for the first time in their Reply, an argument that the individual Defendants Zhu, Barbour, and Johnson may not be held liable for fraudulent misrepresentation.  (ECF No. 93 at 11.)  In analyzing whether an individual may be held liable for the acts of the corporation, the Maryland Supreme Court explained:

23

> The general rule is that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body. Of course, participation in the tort is essential to liability. If the officer takes no part in the commission of the tort committed by the corporation, he is not personally liable therefor unless he specifically directed the particular act to be done, or participated or cooperated therein. It would seem, therefore, that an officer or director is not liable for torts of which he has no knowledge, or to which he has not consented. Thus, e.g., to make an officer of a corporation liable for the negligence of the corporation there must have been upon his part such a breach of duty as contributed to, or helped to bring about, the injury; he must have been a participant in the wrongful act.

*Tedrow v. Deskin*, 265 Md. 546, 550-51 (1972) (internal citations omitted).

In the instant case, Plaintiffs specifically allege that Defendants Zhu, Barbour, and Johnson made multiple representations regarding the KN95 face masks, and the testing results, and Plaintiffs relied on their alleged material misstatements in purchasing the face masks to their detriment.  *See* ECF No. 71 ¶¶ 123, 124, 126, 132, 133, 361-75.  Accordingly, the court declines to dismiss Count III on this basis.  The Motion will be denied as to Count III.

### C.   <u>Breach of Contract – Count V</u>

Defendants argue that Plaintiffs' breach of contract claim fails to allege that the individual Defendants "acted beyond anything other than mere agents at all times relevant."  (ECF No. 86 at 16.)

Outside of fraud, a corporate officer is not personally liable for an act taken on behalf of a corporation or for its contracts.  *Ace Development Co. v. Harrison*, 196 Md. 357, 366 (1950).  In entering into contracts, when a party "plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal, unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of the principal."  *Burkhouse v. Duke*, 190 Md. 44, 46-47 (1948).

While Plaintiffs allege generally that Zhu and Barbour were acting in their individual capacities, the allegations are conclusory.  *See* ECF 71 ¶¶ 30, 32.  There are no allegations to suggest that the individual Defendants' alleged misrepresentations regarding the agreement to swap the masks were made personally as opposed to on behalf of their companies.  Instead, Plaintiffs' allegations regarding the swap of the nonconforming masks allege that "3B Tech and Zhu," "3B Tech, Zhu, and Barbour" offered and agreed to swap the nonconforming face masks. (ECF 71 ¶¶ 245, 246, 248.)  Accordingly, the Motion will be granted as to Count V against Defendants Zhu and Barbour.

### D.    New Hampshire Consumer Protection Act – Count VI

Defendants argue that Plaintiffs have failed to place the alleged offending conduct with the intended reach of the NHCPA.  (ECF No. 86 at 16.)

The NHCPA, N.H. REV. STAT. ANN. § 358-A:2, provides in part, "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  N.H. REV. STAT. ANN. § 358-A:2.  "[F]or purposes of the statute, a misrepresentation is made 'within-this-state' when New Hampshire is the 'locus of the offending conduct,' or, put differently, whenever a person receives a misrepresentation in the State of New Hampshire."  *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 107 (D.N.H. 2020).

Plaintiffs allege that the NHCPA applies to Bluemar, because Defendants "entered into a contract with Bluemar in New Hampshire, engaged in trade and commerce in New Hampshire, transacted business in New Hampshire, offered for sale goods to Bluemar in New Hampshire, sold goods to Bluemar, entered into agreements with Bluemar in New Hampshire, and engaged in trade and commerce directly affecting people of New Hampshire." (ECF No. 71 ¶ 415.)  Plaintiffs

further allege that the misleading testing reports and photos of face masks were sent and received by Bluemar in New Hampshire. *Id.* ¶¶ 135, 156, 174-176, 183-184. Accordingly, Plaintiffs adequately allege that the offending conduct occurred within the state for purposes of the NHCPA.

Defendants further argue that the conduct alleged by Plaintiffs does not fall within those prohibited by the NHCPA. In their Reply, Defendants reference the "rascality test" that has been considered in the New Hampshire Supreme Court. (ECF No. 93 at 12.)

The NHCPA prohibits certain deceptive acts and practices, including but not limited to:

> (i) passing off goods as those of another; (ii) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (iii) causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; (iv) using deceptive representations or designations of geographic origin in connection with goods or services; (v) representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have; … (vii) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … and (ix) advertising goods or services with intent not to sell them as advertised.

N.H. Rev. Stat. Ann. § 358-A:2. The NHCPA also "employs the rascality test to determine which actions not specifically delineated are covered by the CPA." *C.Y. Assets Investments v. Kuhn*, No. 05-E-544, 2008 WL 6630066 (N.H. Sup. Ct. July 31, 2008). "Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.*

Plaintiffs allege:

> Defendants' sale of products such as the SCT manufactured KN95 face masks using fraudulent certifications and/or fraudulent stamps is a violation of the CPA.

> Defendants' representations that the face masks sold to and purchased by Plaintiffs would meet or exceed certain qualities is a violation of the CPA.
>
> Defendants' business practices in connection with the sale of the non-conforming KN95 face masks to Bluemar are unfair, immoral, unethical, oppressive and unscrupulous.
>
> Defendants' business practices in connection with the sale of the non-conforming KN95 face masks to Bluemar caused substantial injury to Bluemar and others.
>
> Defendants' business practices in connection with the post-sale testing and concealment of their knowledge that the face masks were non-conforming, and affirmative statements to the contrary, are unfair, immoral, unethical, oppressive and unscrupulous.

(ECF ¶¶ 419-423.)  Plaintiffs' allegations that Defendants knowingly made misrepresentations regarding the masks and tests fall within the language of the NHCPA.  *See C.Y. Assets*, 2008 WL 6630066 (concluding that willful misrepresentations violated the NHCPA).  Accordingly, Plaintiffs adequately state a claim under the NHCPA.

Lastly, Defendants argue that Plaintiffs fail to allege facts that the individual Defendants acted personally, rather than as agents and representatives of the corporate entity.  (ECF No. 86 at 18.)  Plaintiffs counter that veil-piercing is not required because the individual Defendants made misrepresentations in their individual capacities.  (ECF No. 89 at 19.)

The NHCPA "does not contain a specific provision that allows individuals to be held liable for the acts of the 'corporate' entity absent application of the veil-piercing doctrine." *Unit Owners Ass'n of Summit Vista Lot 8 Condo. v. Miller*, 141 N.H. 39, 44 (1996).  In *Unit Owners*, the New Hampshire Supreme Court reversed a judgment holding an individual liable under the NHCPA at § 358-A:2, despite finding that the individual "materially participated . . . in his individual capacity." *Id.* at 43.  The court explained that "[i]n order to assess personal liability for acts [] under the Consumer Protection Act, '[w]e will pierce the corporate veil and assess individual

liability . . . where the corporate identity has been used to promote an injustice or fraud, or where the defendant has suppressed the fact of incorporation.'" *Id.* (quoting *Gautschi v. Auto Body Discount Center*, 139 N.H. 457, 462 (1995) (citations omitted); *see Archdiocese of San Salvador v. FM Intern., LLC*, No. 05-cv-237-JD, 2006 WL 2583262, at *10 (granting the motion to dismiss the § 358-A:2 claim "because even a corporate officer's 'material participation' in unfair or deceptive acts does not amount to a violation of the statute by him personally").

"A plaintiff states sufficient facts to pierce an LLC's veil when the allegations in the complaint make it plausible that the LLC's members have used the LLC's corporate form 'to promote an injustice or fraud on the' plaintiff." *Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*, 565 F. Supp. 3d 222, 234 (D.N.H. 2021) (quoting *Norwood Grp., Inc. v. Phillips*, 149 N.H. 722, 724 (2003)).  In its analysis, the court considers: lack of sufficient separation between an entity and its officers, that an officer exercised sole and exclusive control over the entity, or that the entity intermingled its affairs with the officer. *Id.* (citations omitted).

Plaintiffs fail to allege a veil-piercing theory.  There are no allegations that Zhu, Barbour, or Johnson used Pro-Com or 3B to promote their personal business/es rather than the business of the corporations. *Vill. Press, Inc. v. Stephen Edward Co.*, 120 N.H. 469, 471 (1980).  Accordingly, the Motion is granted as to Count VI against Defendants Zhu, Barbour, and Johnson.

**CONCLUSION**

For the reasons set forth herein Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 86) is GRANTED IN PART and DENIED IN PART: granted as to Counts I and II against all Defendants; granted as to Count V against Defendants Zhu and Barbour; granted as to Count VI against Defendants Zhu, Barbour, and Johnson; and denied as to Count III.

A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

Date: September 6, 2023