**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AMA SYSTEMS, LLC, *et al.*,

    *Plaintiffs*,

    v.

3B TECH, INC., *et al.*,

    *Defendants*.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

    \*

    \*

        **Case No. 1:21-cv-01472-JRR**

    \*

    \*

    \*

## <u>MEMORANDUM OPINION</u>

Pending before the court is Defendant Zake International, Inc. d/b/a/ Zake USA d/b/a Zake Group's ("Zake USA") Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction. (ECF No. 104; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND

A comprehensive factual background is set forth in the court's memorandum opinions of June 14, 2022, at ECF No. 39 and September 6, 2023, at ECF No. 122. For economy of time and space, the court relays here only those facts pertinent to the Motion.

Plaintiff AMA is a "Concept-to-Market" Maryland limited liability company that "provides analysis and deployment services for products and services." (ECF No. 71 ¶ 19.) Plaintiff Bluemar is a New Hampshire limited liability company that provides "logistics and distribution of products, among other services." *Id.* ¶ 20. Defendant 3B Tech is an Indiana-based importer, distributor, and seller of various products, including products manufactured in China.

*Id.* ¶ 22. Defendant Pro-Com is a California-based importer and distributor specializing in consumer electronics and packaged goods. *Id.* ¶ 23. Defendant Salusen is an Indiana-based online retailer of personal protective equipment. *Id.* ¶ 26. Defendant Zake USA is an Indiana corporation with the same address as 3B Tech and Salusen, and offers business to business distribution with Pro-Com. (ECF No. 71 ¶ 37.)

Defendant Jian Qing Johnny Zhu ("Zhu") is the incorporator, president, owner, and former CEO of 3B Tech; an owner of Pro-Com, Salusen, and non-party Zake China; and he also owns a portion of Zake USA. (ECF No. 71 ¶¶ 22-23, 26, 37.) Zhu operates Zake USA and has been the management for Zake USA. *Id.* ¶ 37. Zhu also is the owner of Shenzhen Centurion Technology Company ("SCT"), a manufacturing plant in China producing disposable masks and other healthcare related supplies. *Id.* ¶ 21. Defendant Brett Barbour is the vice president, registered agent, and former interim CEO of 3B Tech; an owner of Pro-Com; and an owner, as well as the incorporator, president, and resident agent of Salusen. *Id.* ¶¶ 26, 31. Defendant Michael Johnson is the senior vice president of Pro-Com and may have a role with 3B Tech and/or Salusen. *Id.* ¶¶ 33, 36.

As relevant to Plaintiffs' claims, SCT manufactured face masks with the Salusen label/brand in China. (ECF No. 71 ¶¶ 21, 44.) The SCT manufactured masks were imported to the United States for distribution by Pro-Com and/or Zake USA, distributed by Pro-Com to Salusen and/or 3B Tech, and then sold and distributed by 3B Tech to Plaintiffs and others for re-sale to third-party end users. *Id.* ¶¶ 21–34, 44. Plaintiffs allege that Zake USA "assisted in the purchase, importation, sale and/or distributed of the SCT face masks sold to Plaintiffs by 3B Tech." *Id.* ¶ 39. Plaintiffs further allege that "[a]t various times, Zhu, Barbour, and Johnson used @zake.com e-mail addresses when they were communicating about the SCT face masks and the

sale of those face masks to Plaintiffs." *Id.* Plaintiffs allege that Zake USA, Pro-Com, Salusen, Barbour, Johnson, Zake China, and 3B Tech repeatedly altered and concealed independent testing reports that confirmed the counterfeit nature of the masks.  (ECF No. 71 ¶¶ 58, 80, 161, 178.) Plaintiffs further allege that Zake USA, Pro-Com, Salusen, Barbour, Johnson, and 3B Tech made multiple false representations to Plaintiffs regarding the masks.  *See generally* ECF No. 71 ¶¶ 129-241.

On January 5, 2023, Plaintiffs filed the Second Amended Complaint which sets forth six counts: (Count I) Civil Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all Defendants; (Count II) Civil Violation of RICO, 18 U.S.C. § 1962(d), By Conspiring to Violate 18 U.S.C. § 1962(c) against all Defendants; (Count III) Fraudulent Misrepresentation against all Defendants; (Count IV) Breach of Contract against 3B Tech and BCO Lab; (Count V) Breach of Contract against 3B Tech, Salusen, Zhu, Barbour, and BCO Lab; and (Count VI) Violation of the New Hampshire Consumer Protection Act ("NHCPA"), N.H. REV. STAT. §§ 358A:1, *et seq.,* against all Defendants.  (ECF No. 71.)  The prayer for relief seeks: (i) damages in an amount no less than $1,000,000.00 including compensatory, consequential, exemplary, treble, and punitive damages; (ii) attorneys' fees and costs; (iii) interest; and (iv) any other relief afforded by law.  *Id.* at 82.

On January 31, 2023, Defendants 3B Tech, Pro-Com, Salusen, Zhu, Barbour, and Johnson filed a motion to dismiss, which sought dismissal of the Second Amended Complaint on various grounds.   The motion to dismiss was granted in part and denied in part on September 6, 2023. (ECF Nos. 122 and 123.)  The motion was granted as to Counts I and II; granted as to Count V against Defendants Zhu and Barbour; granted as to Count VI against Defendants Zhu, Barbour, and Johnson; and denied as to Count III.  (ECF No. 123.)

On March 13, 2023, Zake USA filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  (ECF No. 104.)  Zake USA argues that Plaintiffs fail to state a RICO claim, and therefore, in the absence of a viable RICO claim, the court may not exercise personal jurisdiction over Zake USA because it does not have sufficient minimum contacts with the state of Maryland.  *Id.* at 11-14.  If the court finds that there is personal jurisdiction, Zake USA argues that Plaintiffs fail to state a claim in Counts III and VI.  *Id.* at 10-11.

## II.    LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(2)

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'"  *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court."  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge."  *Id.*  "[I]f a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an 'evidentiary hearing'" or, at the very least, "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments, using procedures

that provide the parties with a fair opportunity to present to the court the relevant facts[.]"   *Id.*

(citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir.

2005)); *Sec. and Exch. Comm'n v. Receiver for Rex Ventures Group, LLC*, 730 F. App'x 133, 136

(4th Cir. 2018) (internal citations and quotation marks omitted).

Plaintiffs and Zake USA have not engaged in full discovery.  Accordingly, Plaintiffs need

only make a *prima facie* showing of personal jurisdiction.  "In deciding whether the plaintiff has

proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable

inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*

*Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).  "In considering whether a plaintiff has met

this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure

itself of personal jurisdiction."  *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir.

2020).

**Federal Rule of Civil Procedure 12(b)(6)**

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v.*

*City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*,

178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted

if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all

reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the

plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief."  *Edwards*,

178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.    ANALYSIS

### A.    <u>Personal Jurisdiction – Federal RICO Statute 18 U.S.C. § 1965</u>

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(C), a federal court may exercise personal jurisdiction over a defendant when authorized by federal statute. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). Plaintiffs assert that the court may exercise personal jurisdiction over Zake USA pursuant to the federal RICO statute, 18 U.S.C. § 1965. (ECF No. 107 at 2-3.) Zake USA counters that Plaintiffs have failed to state a RICO claim, which prohibits Plaintiffs from relying on that statute to establish personal jurisdiction. (ECF No. 104 at 111.)

The civil RICO statute provides that service may be made "on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). "The Fourth Circuit 'has construed Section 1965(d) as authoriz[ing] nationwide service of process and, thus, the exercise of personal jurisdiction in any district court,' subject to due

process considerations under the Fifth Amendment." *Becker v. Noe*, No. ELH-18-00931, 2019 WL 1415483, at *17 (D. Md. Mar. 27, 2019) (quoting *Swarey v. Desert Capital REIT, Inc.*, No. DKC 11-3615, 2012 WL 4208057, at *7 (D. Md. Sept. 20, 2012)). Therefore, "service of process on a RICO defendant in a judicial district where that defendant resides establishes personal jurisdiction, provided that the assertion of jurisdiction comports with due process." *Swarey*, 2012 WL 4208057, at *6.

"A defendant may challenge a court's exercise of personal jurisdiction under RICO's nationwide service of process clause by establishing that the exercise of jurisdiction violates the Fifth Amendment's Due Process Clause or that the RICO claim is not colorable." *Hardwire, LLC v. Ebaugh*, No. CV JKB-20-0304, 2021 WL 3809078, at *4 (D. Md. Aug. 26, 2021). "A RICO claim is not colorable if it is 'implausible, insubstantial, or frivolous.'" *Becker*, 2019 WL 1415483, at *17 (quoting *D'Addario v. Getter*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003)). A RICO claim, however, "can be colorable while still failing to satisfy the pleading requirements of [Rule 12(b)(6) of] the Federal Rules of Civil Procedure." *Swarey*, 2012 WL 4208057, at *8. However, if the court finds that the RICO claim is "deficient under Rule 12(b)(6) 'to pursue [] remaining claims, [the plaintiff] must establish a basis for the exercise of personal jurisdiction over defendants, unrelated to RICO.'" *Hardwire*, 2021 WL 3809078, at *4 (quoting *Becker*, 2019 WL 1415483, at *22). In other words, if the RICO claim is dismissed pursuant to Rule 12(b)(6), the plaintiff "must identify an independent basis for personal jurisdiction over [the defendant]." *Id.* at *5.

As set forth in the court's memorandum opinion at ECF No. 122, Plaintiffs fail to state a RICO claim in Counts I and II. Accordingly, to pursue the remaining claims against Zake USA (Counts III and VI), Plaintiffs "must establish a basis for the exercise of personal jurisdiction over [Zake USA], unrelated to RICO." *Becker*, 2019 WL 1415483, at *22.

**B.**   <u>**Personal Jurisdiction – Maryland Long-Arm Statute**</u>

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).  In order for the court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment.  *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).  This court accepts as binding Maryland courts' interpretation with regard to the state's long-arm statute.  *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir. 1993).  It is well settled in Maryland that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the United States Constitution.  *Mohamed v. Michael*, 279 Md. 653, 657 (1977).  Thus, this court's statutory and constitutional inquiry is merged for purposes of establishing personal jurisdiction. *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996).

Maryland's long-arm statute provides:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> **(1)** Transacts any business or performs any character of work or service in the State;
>>
>> **(2)** Contracts to supply goods, food, services, or manufactured products in the State;
>>
>> **(3)** Causes tortious injury in the State by an act or omission in the State;

> **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> **(5)** Has an interest in, uses, or possesses real property in the State; or
>
> **(6)** Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a) and (b).

Maryland's long-arm statute requires plaintiffs to identify the section of the long-arm statute on which they rely. *Id.* § 6-103(a); *see Ottenheimer Publishers, Inc. v. Playmore, Inc*., 158 F. Supp. 2d 649, 652 (D. Md. 2001) (explaining that "[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction . . . .").  This requirement can be met through a complaint or in opposition to a Rule 12(b)(2) motion.  *Hausfeld v. Love Funding Corp*., 16 F. Supp. 3d 591, 597 (D. Md. 2014).  In their opposition, Plaintiffs cite to sections 6-103(b)(1) and (3) of the Maryland long-arm statute.[1]  (ECF No. 107 at 3.)

Zake USA argues that the court lacks personal jurisdiction under section 6-103(b)(1) because Plaintiffs fail to specify "what actions Zake allegedly took that might be regarded as assistance so material that it would qualify as transacting business, performing work, or contracting to supply goods or products to Maryland."  (ECF No. 104 at 13.)  Zake USA further argues that

---

[1] While Plaintiffs appear to mis-cite the Maryland long-arm statute, the court construes Plaintiffs to argue that the court may exercise specific personal jurisdiction over Zake USA pursuant to sections 6-103(b)(1) and (3) of the Maryland long-arm statute.  (ECF No. 107 at 3.)

Plaintiffs fail to satisfy section 6-103(b)(3) because Plaintiffs fail to allege that Zake USA caused tortious injury in Maryland by an act or omission in Maryland. *Id.*

### 1.    Section 6-103(b)(1)

Under section 6-103(b)(1), the court may exercise personal jurisdiction over an entity, who directly or by an agent, "[t]ransacts any business or performs any character of work or service in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1). The phrase "transacting business" does not require commerce or transactions for profit; it is, however, construed narrowly and typically requires significant negotiations or intentional advertising. *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 353 (1967). "An essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the contact." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009). While "[s]ubsection (b)(1) does not require the defendant to have been present physically in Maryland," *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007), it "requires 'actions [that] culminate in purposeful activity within the State.'" *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md. App. 559, 568 (1993) (quoting *Sleph v. Radtke*, 76 Md. App. 418, 427, *cert. denied*, 314 Md. 193 (1988)). For example, in *Bahn*, the court found that the nonresident defendant "transacted business" within the meaning of section 6-103(b)(1) when the defendant sent mail to the Maryland plaintiffs, contracted with the Maryland plaintiffs, and received payments from the Maryland plaintiffs. *Bahn*, 98 Md. App. at 570.

In the instant case, Plaintiffs allege that 3B Tech entered into the purchase orders with Bluemar, and Bluemar entered into purchase orders with AMA, and subsequently, Pro-Com/3B Tech delivered the masks to AMA in Maryland. (ECF No. 71 ¶¶ 103, 110-11.) Plaintiffs repeatedly allege that Defendant 3B Tech sold the face masks to Plaintiffs. (*See* ECF No. 71 ¶¶

62, 100, 102-103, 129, 267, 271, 284, 291-92, 294.)  Plaintiffs allege that Zake USA and 3B Tech have the same office address, (ECF No. 71 ¶ 37), and Zake USA assisted in the purchase, importation, sale and/or distribution of the SCT face masks sold to Plaintiffs.  (ECF No. 71 ¶¶ 39.)

Personal jurisdiction over Zake USA must be based on Zake USA's and/or its agents' personal contacts with the state of Maryland.  *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012) (explaining that pursuant to section 6-103(b)(1) "personal jurisdiction over [the defendant] must be based on his personal contacts with the state of Maryland . . . .").  Plaintiffs' allegation that Zake USA allegedly assisted in the purchase, importation, sale and/or distribution of the face masks appears to be based on the allegation that Zake USA shares an office address with 3B Tech.  As Zake USA argues, however, there are no additional allegations in the Second Amended Complaint to suggest that Zake USA assisted in the sale and/or distribution of the face masks to AMA in Maryland; nor are there any allegations to suggesting that Zake USA had personal contacts with the state of Maryland.  Indeed, as stated above, Plaintiffs repeatedly allege that Defendant 3B Tech sold the face masks to Plaintiffs.  Plaintiffs' allegations with respect to Zake USA appear to be based on 3B Tech/Pro-Com's alleged activities with AMA, and not Zake USA's personal contacts with AMA in Maryland.

This is further supported by Plaintiffs' argument that the court may exercise personal jurisdiction over Zake USA on the basis that Zake USA knew that the masks were being sold and delivered to Maryland. (ECF No. 107 at 3).  That Zake USA may have known that 3B Tech/Pro-Com shipped the masks to Maryland is insufficient to satisfy section 6-103(b)(1).  Section 6-103(b)(1) requires that Zake USA "transacted business" in Maryland, such that Zake USA's "actions culminate in purposeful activity within the State." *Sleph v. Radtke*, 76 Md. App. 418, 427

(1988).  No allegations in the Second Amended Complaint suggest that either Zake USA, or Zhu, Barbour, or Johnson acting as agents for Zake USA, transacted business in Maryland. Additionally, there are no allegations to suggest that Zake USA, and/or Zhu, Barbour, or Johnson acting as agents for Zake USA, conducted significant negotiations, or intentionally advertised and sold products in Maryland.  *Craig v. Gen. Finance Corp.*, 504 F. Supp. 1033, 1038 (D. Md. 1981). Further, Plaintiffs do not allege that Zake USA, and/or Zhu, Barbour, or Johnson acting as agents for Zake USA, engaged in contract negotiations with AMA in Maryland regarding the masks.  *See Clarke Veneers and Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, No. CV GLR-19-1738, 2019 WL 7565450, at *3 (D. Md. Oct. 23, 2019), *aff'd*, 821 F. App'x 243 (4th Cir. 2020) (concluding that the defendant's conduct does not satisfy section 6-103(b)(1) where the plaintiff does not allege that contract negotiations between the defendant and the plaintiff took place in Maryland and fails to state that the defendant "intentionally advertised or sold its products in the state").

Section 6-103(b)(1) of the long-arm statute does not provide a basis to assert personal jurisdiction over Zake USA.

### 2. *Section 6-103(b)(3)*

Under section 6-103(b)(3), "there must be (1) a tortious injury in Maryland that was (2) caused by an act or omission in Maryland."  *Craig v. Gen. Finance Corp. of Ill.*, 504 F. Supp. 1033, 1036 (D. Md. 1980).  Zake USA argues that Plaintiffs fail to allege that Zake and/or its agents caused a tortious injury in Maryland by an act or omission in Maryland for purposes of personal jurisdiction analysis.  (ECF No. 104 at 13.)  Plaintiffs assert that Zhu made misrepresentations on behalf of Zake USA to Plaintiffs, and Zhu, Barbour, and Johnson made

misrepresentations to Plaintiffs using @zake.com email addresses.  (ECF No. 107 at 3.)  The court

agrees with Zake USA.

Plaintiffs fail to allege that Zake USA engaged in an act or omission within Maryland.

*Mikes Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 534 (D. Md. 2010)

(granting motion to dismiss where the plaintiff failed to show any injury resulting from the

defendant's "acts or omissions *in* Maryland").  With regard to Zake USA's alleged fraudulent

misrepresentation, Plaintiffs allege:

> Defendants knowingly made false and fraudulent misrepresentations of material facts to Plaintiffs as described in this Second Amended Complaint, including but not limited to the following misrepresentations:
>
> a. The face masks are certified KN95 face masks that could be used in healthcare and related settings;
>
> b. The face masks are conforming KN95 Technology;
>
> c. The face masks are CE Certified technology;
>
> d. The face masks passed filtration tests required to be identified as FFP2 or FFP2 technology;
>
> e. The face masks are EU, CE and FDA certified; f. The face masks are FDA approved;
>
> g. The face masks were sold to the White House;
>
> h. The face masks were tested and independently validated by third party laboratories, including SMQ, SGS, GTI and DEKRA;
>
> i. The face masks are certified and conform as follows: "FDA Certified: Certificate No.: JF-FDA-0328-0116" and "CE Certified: Certificate No.: 4Q200407M.SCTUU98";
>
> j. The face masks, their product and their stock is legit;

k. The face masks are certified and conform as follows: "FFP2 Europe EN 149:2001 + A1:2009 Classified" and "FDA No.: 10066564"; and

l. Other statements as described in this Second Amended Complaint.

These statements were made to Bluemar and/or AMA orally and in writing by Zhu and Barbour.

Zhu and Barbour made these statements to Bluemar and/or AMA orally and in writing in their individual and/or representative capacities on behalf of 3B Tech, Salusen and/or Pro-Com.

(ECF No. 71 ¶¶ 360-62.)

As an initial matter, Plaintiffs do not allege that these alleged misrepresentations were made by Zhu and Barbour on behalf of Zake USA.  However, even if Plaintiffs alleged that the statements were made on behalf of Zake USA, Plaintiffs do not allege that Zake USA and/or its agents made such misrepresentations in Maryland.  *See Aphena Pharma Solutions-Md., LLC v. BioZone Laboratories, Inc.*, 912 F. Supp. 2d 309, 316-17 (D. Md. 2012) (concluding that there is no jurisdiction under section 6-103(b)(3) where the plaintiff did not allege, and the affidavits did not indicate, that the alleged misrepresentations were made in Maryland).   Stated differently, although the alleged misrepresentations by Zake USA and/or its agents may have been felt by Plaintiffs in Maryland, Plaintiffs do not allege that Zake USA or any of Zake USA's agents acted in Maryland.  Accordingly, the court declines to assert personal jurisdiction over Zake USA under section 6-103(b)(3).[2]

---

[2] The paragraphs of the Second Amended Complaint that Plaintiffs cite to in their Opposition further suggest that Zake USA, and/or Zhu, Barbour, and Johnson acting on behalf of Zake USA, did not have any personal contacts with Maryland.  In their opposition, Plaintiffs direct the court's attention to various allegations regarding emails that were sent or received from Bluemar, (ECF No. 71 ¶¶ 88, 94, 162, 183-84, 210), however, Bluemar is located in New Hampshire, not Maryland.  *Id.* ¶ 20.  Further, Plaintiffs cite to an allegation that Johnson on behalf of Zake USA and Pro-Com sent face masks to Michigan, not Maryland.  *Id.* ¶ 208.  Lastly, Plaintiffs cite to an allegation that Zake USA and Johnson made misrepresentations regarding the face masks to SP Richards Company and MANCON—non-parties that Plaintiffs allege were also sold the non-conforming face masks.  *Id.* ¶ 271.

Even if Zake USA's alleged conduct satisfied Maryland's long-arm statute, as discussed

below, the exercise of personal jurisdiction over Zake USA would not comport with due process.

### 3.      *Due Process Clause of the Fourteenth Amendment*

"The requirement that the court have personal jurisdiction . . . springs not from Article III

of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d

124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456

U.S. 694, 702 (1982)).  "Because the personal jurisdiction requirement 'recognizes and protects

an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or

implied consent to the personal jurisdiction of the court.'"  *Id.* (citing *Ins. Corp. of Ireland*, 456

U.S. at 703).   "Absent consent, the exercise of personal jurisdiction must comport with the

requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts

with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play

and substantial justice." *Id.* (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228

(4th Cir. 2019)) (citations omitted).  The nature and quantity of forum-state contacts required

depends on whether the case involves the exercise of "specific" or "general" jurisdiction.  *Id.*

"A court may assert general jurisdiction over foreign corporations to hear any and all

claims against them when their affiliations with the State are so 'continuous and systematic' as to

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A., v.*

*Brown,* 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment*

*Comp. & Placement*, 326 U.S. 310, 317 (1945)).  Specific jurisdiction depends on an "'affiliatio[n]

between the forum and the underlying controversy,' principally, activity or an occurrence that

takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting von

Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)).

In the instant case, Plaintiffs do not appear to argue that Zake USA could be subject to general jurisdiction.  Plaintiffs instead focus on specific jurisdiction arguing that personal jurisdiction over Zake USA is constitutionally permissible because Zake USA and/or its agents knew the masks were being sold and delivered to Maryland.  (ECF No. 107 at 3.)  Plaintiffs further argue that exercising personal jurisdiction over Zake USA comports with due process because Zake USA's agents made misrepresentations by email to Plaintiffs, including AMA in Maryland. (ECF No. 107 at 3.)

The Fourth Circuit applies a three-part test to determine whether a defendant has sufficient minimum contacts with the forum state:  "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"  *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002)).

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp.*, 561 F.3d at 278.  Courts have considered various "nonexclusive factors," that are applicable in the business context, and help to "resolve whether a defendant has engaged in such purposeful availment"  including, but not limited to:

> • whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957);

> • whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);
>
> • whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221, 78 S. Ct. 199; *Burger King*, 471 U.S. at 475-76, 105 S. Ct. 2174;
>
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475-76, 481, 105 S. Ct. 2174;
>
> • whether the parties contractually agreed that the law of the forum state would govern disputes, *see Burger King*, 471 U.S. at 481-82, 105 S. Ct. 2174;
>
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir.1985);
>
> • the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith*, 901 F.2d at 39; and
>
> • whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

*Consulting Eng'rs Corp.*, 561 F.3d at 278.

In analyzing the factors above and construing the Second Amended Complaint in the light most favorable to Plaintiffs, Zake USA has not purposefully availed itself of the privilege of conducting activities within Maryland. There are no allegations that Zake USA maintains offices or agents in Maryland, owns property in Maryland, solicited or initiated business in Maryland, or deliberately engaged in significant or long-term business activities in Maryland.  Further, Plaintiffs do not allege that there was a contract providing that Maryland law would govern disputes, or that Zake USA made in-person contact with AMA in Maryland regarding the business relationship. *See Consulting Engineers Corp.*, *supra.*

17

Few, if any, of Plaintiffs' allegations suggest that Zake USA's and/or its agents' actions underlying Plaintiffs' claims were directed at Maryland. *Aphena Pharma Solutions-Md. LLC*, 912 F. Supp. 2d at 317. As stated above, the Second Amended Complaint alleges that Zake USA's agents made misrepresentations through emails to Bluemar in New Hampshire, not AMA in Maryland. (ECF No. 71 ¶¶ 88, 94, 141-143, 162, 183-87, 193, 200, 208-212.) While Plaintiffs attach email correspondence between Barbour and Bluemar, and AMA is copied, (ECF No. 107-1), the email correspondence alone does not give rise to specific jurisdiction. *See Aphena Pharma Solutions-Md. LLC*, 912 F. Supp. 2d at 317 (concluding that due process does not permit the court to exercise personal jurisdiction over the defendant where the defendant communicated by phone, email, and in person in California with the plaintiff's personnel from Maryland).

Accordingly, Plaintiffs fail to satisfy the first prong of the test for specific jurisdiction. Therefore, the court declines to consider prongs two and three. *See Consulting Engineers Corp.*, 561 F.3d at 278 (explaining that "[i]f, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three"). Extension of personal jurisdiction over Zake USA does not pass muster under due process.

## C.   <u>Failure to State a Claim</u>

Because the court finds that it lacks personal jurisdiction over Zake USA, the court will not address Zake USA's alternative Rule 12(b)(6) arguments.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, by separate order, Defendant Zake USA's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction (ECF No. 104) will be granted.

/S/

_____

Julie R. Rubin
United States District Judge

November 9, 2023