IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AMA SYSTEMS, LLC,** *et al.*, | * | |
| *Plaintiffs*, | * | |
| | * | Case No. 1:21-cv-01472-JRR |
| v. | * | |
| **3B TECH, INC.,** *et al.*, | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs AMA Systems, LLC ("AMA"), and Bluemar Promotions, LLC ("Bluemar"), bring this action against Defendants 3B Tech, Inc. ("3B Tech"), Pro-Com Products, Inc. ("Pro-Com"), Salusen, Inc. ("Salusen"), Jian Qing "Johnny" Zhu, Brett Barbour, Michael Johnson, and John Does 1-10 (collectively, "Defendants) for conspiracy to manufacture, market, and sell fraudulently certified personal protective equipment ("PPE") for protection against COVID-19. (ECF No. 140; "Second Amended Complaint.")  Pending before the court is Plaintiffs' Renewed Motion for Partial Summary Judgment.  (ECF No. 141; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion is denied.

I.  **<u>PROCEDURAL BACKGROUND</u>[1]**

On June 6, 2021, Plaintiffs filed this action. (ECF No. 1.) On August 31, 2021, Plaintiffs filed an Amended Complaint. (ECF No. 33.) On December 6, 2022, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which was granted on January 5, 2023. (ECF Nos. 59 and 70.) On January 31, 2023, Defendants 3B Tech, Barbour, Johnson, Pro-Com, Salusen, and Zhu moved to dismiss for failure to state a claim; that motion was granted in part and denied in part. (ECF Nos. 86, 122, and 123.) In March 2023, Defendants BCO Lab and Zake International filed separate motions to dismiss for failure to state a claim and for lack of personal jurisdiction; the court granted both motions for lack of personal jurisdiction. (ECF Nos. 103, 104, 124, 125, 126, and 127.)

On January 17, 2024, in view of the court's orders at ECF Nos. 123, 125, 127, and 132, the court ordered Plaintiffs to file a revised and cleaned up pleading. (ECF No. 139.) On January 31, 2024, Plaintiffs filed a revised Second Amended Complaint. (ECF No. 140.) The Second Amended Complaint sets forth four claims: Fraudulent Misrepresentation against all Defendants (Count III); Breach of Contract against 3B Tech (Count IV); Breach of Contract against 3B Tech and Salusen (Count V); and Violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. §§ 358A:1, *et seq.*, ("NHCPA") against 3B Tech, Pro-Com, and Salusen (Count VI). (ECF No. 140.)[2]

On January 31, 2024, Plaintiffs filed the Motion seeking summary judgment as to Counts III through V of the Second Amended Complaint. (ECF No. 141.)

---

[1] A comprehensive factual background is set forth in the court's memorandum opinions of June 14, 2022, and September 6, 2023, at ECF Nos. 39 and 122, respectively. For efficiency of space and time, the court will not repeat it here.

[2] The Second Amended Complaint removes Counts I and II—the RICO claims—and begins with Count III.

## II.     LEGAL STANDARD

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may

not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650 (2014).

### III. ANALYSIS

#### A. Federal Rule of Civil Procedure 56

The court's analysis begins with the requirements of Federal Rule of Civil Procedure Rule 56. Pursuant to Rule 56(c)(1), the party "asserting that a fact cannot be or is genuinely disputed must support this assertion." FED. R. CIV. PROC. 56(c)(1). (This makes senses inasmuch as the court may not engage in factfinding or evidence weighing on a Rule 56 motion.) The rule prescribes two methods by which a party can satisfy its 56(c)(1) burden:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).

Critically, a party must present the materials it cites in "a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Depositions and affidavits must be based on personal knowledge, and all documents and other physical evidence must be properly authenticated and either non-hearsay or within a recognized exception." *E.E.O.C. v. Denny's, Inc.*, Civ. No. WDQ-06-2527, 2010 WL 2817109, at *3 (D. Md. July 16, 2017). "For a court to accurately determine whether there is a factual dispute for a jury, the judge must be assured that the evidence [s]he

4

examines at summary judgment is as authentic as that which the jury will consider." *Tillery v. Borden*, No. CIV.A. CBD-07-1092, 2010 WL 2132226, at *2 (D. Md. May 25, 2010).

In *Tillery v. Borden*, this court thoroughly explained:

> "It is well established that that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi*, 999 F.2d at 92. *See also DeBlois v. Gensel*, No. CCB–07–2596, 2009 WL 2713947, at *6 (D. Md. Aug.26, 2009) (documents considered on summary judgment must be "authenticated by either an affidavit or deposition"); *Meyers v. Lazer Spot, Inc.*, No. L–05–3407, 2008 WL 2609386, at *4 (D. Md. June 25, 2008) (party may not rely on unauthenticated documents in support of summary judgment); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 536, 541–42 (D. Md. 2007) ("unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669 (D. Md. 1999). Also includes significant discussion of the standard for proving authenticity); *Stanley Martin Co., Inc. v. Universal Forest Prod. Shoffner, LLC*, 396 F. Supp. 2d 606, 612–13 (D. Md. 2005) (materials were admitted because they were sufficiently authenticated). The critical factor for authentication is demonstrating "through evidence . . . a finding that the document is what the proponent claims." *Stanley Martin Co., Inc.*, 396 F. Supp. 2d at 613 (citing FED. R. EVID. 901).
>
> …
>
> Rule 56, though, "is not unfailingly rigid." *United States Dep't. of Housing and Urban Affairs v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 926 n. 8 (4th Cir. 1995). "Evidence appropriate for summary judgment need not be in a form that would be admissible at trial . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324. *See also Global Policy Partners v. Yessin*, No. 1:09cv859, 2010 WL 675241, at *6 (E.D. Va. Feb. 18, 2010) ("It is clear that evidence not in a form admissible at trial may nonetheless be considered in summary judgment."); *Lorraine*, 241 F.R.D. at 537–38. A "nonmoving party could defeat summary judgment with materials capable of being reduced to admissible evidence at trial." *Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d at 926 n. 8 (citing *Celotex*, 477 U.S. at 327). While admissibility is important, authenticity is indispensable. The Court must have confidence in the evidence it considers, particularly when it is contemplating a dispositive motion.

> Affidavits are one such permissible form of authentication at summary judgment and are explicitly mentioned as such in Rule 56. "[T]o be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" *Orsi*, 999 F.2d 86, 92 (4th Cir. 1993) (quoting WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2722, at 58–60 (1983 & 1993 Supp.)). *See also B & J Enter. v. Giordano*, 329 Fed. Appx. 411, 415 (4th Cir. 2009); *DeBlois v. Gensel*, No. CCB–07–2596, 2009 WL 2713947 at *1 n. 1 (D. Md. Aug. 26, 2009); *Meyers v. Lazer Spot, Inc.*, No. L–05–3407, 2008 WL 2609386 at *4 (D. Md. June 25, 2008); *Lorraine*, 241 F.R.D. at 537–38. In the context of summary judgment, affidavits must meet the requirements set forth in Rule 56, and affidavits that fail to meet these requirements are insufficient to authenticate materials. *See DeBlois v. Gensel*, No. CCB–07–2596, 2009 WL 2713947 at *1 n. 1 (D. Md. Aug.26, 2009). A document can be rendered inadmissible on summary judgment if its affidavit does not meet the Rule 56 requirements. Similarly, it stands to reason that a document with no supporting affidavit also cannot be considered on summary judgment. In the present case, Defendants do not present the Court with any affidavits authenticating the documents they submit.
>
> As *Stanley Martin* indicated, the value supporting the Rule 56 standards for affidavits is found in Federal Rule of Evidence 901— that the item is what it purports to be. FED. R. EVID. 901; *Stanley Martin Co., Inc.*, 396 F.Supp.2d at 613 (where materials were admissible on summary judgment because they met the Rule 901 standard for authenticity). In summary judgment "a party seeking to admit an exhibit need only make out a prima facie case showing that this is what he or she claims it to be." *Lorraine*, 241 F.R.D. at 542. Under the Federal Rules of Evidence, documents are rarely admitted on their face. More often, a foundation must be laid which at least supports a colorable argument for authenticity. The document may be admissible for other reasons, but the Court should have comfort in knowing that it is authentic. In summary judgment, a proper affidavit achieves this goal. This "requirement of authentication and identification also insures that evidence is trustworthy" in summary judgment. *Id.* The affidavits assure the Court that the evidence used to make its decision is authentic, and therefore the dispositive decision is reliable.

No. CIV.A. CBD-07-1092, 2010 WL 2132226, at *3–5 (D. Md. May 25, 2010).

6

Plaintiffs attach 47 exhibits to their Motion; Defendants attach 38 exhibits to their response. Many of Plaintiffs' and Defendants' exhibits are not authenticated. Plaintiffs submit the declaration of John Cosco, founder and Managing Member of Bluemar, but the declaration fails to authenticate a considerable number of exhibits on which the Motion relies. The court, therefore, will not consider any such documents, which hobbles the Motion. (For their part, Defendants do not present any mode of authentication of their exhibits.)

The Motion is additionally deficient due to its opaque, *en masse* reference to various exhibits, which Plaintiffs apparently expect the court to inspect and pick through to find whatever morsel may support Plaintiffs' position. The court declines to undertake this verboten factfinding foray; and it does not comply with the express instruction of the rule. FED. R. CIV. P. 56(c)(1)(A) (requiring citation to "particular parts of materials"). By way of example only, Plaintiffs' Statement of Undisputed Material Facts in support of the fraudulent misrepresentation claim provides in part:

> 21. Johnny Zhu, Brett Barbour and 3B Tech gave Bluemar a testing report from the testing facility DEKRA. That DEKRA testing report had been altered to reflect that the face masks passed FFP2 filtration tests, when the face masks had failed those tests. Ex. 17.
>
> 22. Johnny Zhu, Brett Barbour and 3B Tech gave Bluemar a testing report from the testing facility SMQ, informing Bluemar that the face masks were legitimate KN95 face masks. That SMQ testing report had been altered to reflect that the face masks passed KN95 filtration tests, when the face masks had failed those tests. Ex. 18, 19, 31.
>
> 23. The face masks 3B Tech sold to Bluemar and shipped to AMA are not FDA Certified. Ex. 33.
>
> 24. In April 2020, Brett Barbour, Johnny Zhu and 3B Tech knew that the face masks were not FDA Certified and that the manufacturer, SCT, was not on the list of FDA approved manufacturers for the importation and distribution of KN95 face masks in the United States. Ex. 33.

7

> 25. Johnny Zhu maintained that the face masks passed the filtration tests performed by DEKRA even when faced with the altered report and DEKRA's position that the report was a fraud. Johnny Zhu also continued to maintain the masks were still "good" even if they failed the tests. Exs. 25, 33.
>
> …
>
> 27. Brett Barbour told Bluemar that one of their downstream customers is a large medical group that had Defendants' KN95 face masks tested, and reported back that Defendants' KN95 face masks are the "best by far they have ever seen." Ex. 35.
>
> …
>
> 30. Brett Barbour told Bluemar that they have a testing machine they use on each batch of masks. Ex. 37.
>
> 31. Brett Barbour, Johnny Zhu, and 3B Tech made the above-cited false statements with the intention that Bluemar would rely on those statements and purchase the advertised KN95 face masks from 3B Tech. See Exs. 1-37.
>
> 32. Brett Barbour, Johnny Zhu, and 3B Tech made the above cited statements intentionally, knowing they were false at the time they were made. See Exs. 1-37.

(Pls.' Mot., Statement of Undisputed Material Facts, ECF No. 141-1 ¶¶ 21–25, 27, 30–32.) To support Plaintiffs' assertions, Plaintiffs direct the court's attention to various "Skype Messages," which are not authenticated and which bear no indicators of authenticity or source on their face. (Pls.' Mot., Exhibits 19, 21, 22, 23, 34, 35, and 37.)

For example, Plaintiffs contend that "Johnny Zhu and 3B Tech knew that Bluemar was reselling the face masks it was purchasing from 3B to another customer." (Pls.' Mot., ECF No. 141-1 ¶ 3.) In support of this averment, Plaintiffs cite to the Declaration of John Cosco at Exhibit 1, and "Johnny Zhu, Brett Barbour and 3B Tech Communications attached as Exs. 19, 20, 21, 22." *Id.* Exhibits 19, 21, and 22 involve communications between "whiteaccordvtec" and "bbarbou."

8

(Pls.' Mot., ECF Nos. 141-22, 141-24, and 141-25.)  Plaintiffs cite the same exhibits (19, 20, 21, and 22) to suggest that Defendants made material misrepresentations to Bluemar.  (Pls.' Mot., Statement of Undisputed Material Facts, ECF No. 141-1 ¶¶ 17, 19, 22, 31, and 32.)  The court has no earthly idea who is involved in the Skype messages or what their significance might be to this action.

B.      **Disputes of Material Fact**

Even were the court to excuse Plaintiffs' (and Defendants') material non-compliance with Rule 56, it is clear on the record before the court that genuine disputes of material fact exist as to Plaintiffs' claims for breach of contract (both of them) and fraudulent misrepresentation.

1.      **Fraudulent Misrepresentation (Count III)**

Plaintiffs argue they are entitled to summary judgment on Count III because: (1) 3B Tech, Zhu, and Barbour made numerous false statements of fact regarding the KN95 face masks so that Bluemar and AMA would purchase the non-conforming face masks and continue to do so; (2) 3B Tech, Zhu, and Barbour knew that Bluemar and AMA would rely on those statements in deciding whether to purchase the masks; (3) Bluemar and AMA purchased the face masks in reliance on those statements; and (4) as a result, Bluemar and AMA suffered damages.  (Pls.' Mot., ECF No. 141-1 at 17–18.)

Defendants counter:

> In the present case, Plaintiffs concede that by early June of 2020, Bluemar and AMA became aware of what they now claim was Defendants' fraudulent conduct, including, allegedly Defendants' fraudulent alteration of the DEKRA report, and then during the succeeding month nevertheless entered into a so–called Swap Agreement with Defendants whereby 3B was to accept the return of 250,00 allegedly nonconforming face masks, voluntarily refund to Bluemar the purchase price of those masks, $500,000, specially order 250,000 new conforming substitute masks, and then exchange the new masks for the 250,000 originally-delivered masks

> remaining in AMA's inventory. Given the foregoing scenario, Plaintiffs can never hope to establish that, in entering into the July 7, 2020 Swap Agreement, they relied upon misrepresentations made by Defendants in the months leading to July 7, 2020, concerning which they now claim they then knew were false and fraudulent but nevertheless relied upon, reasonably, in entering into the Swap Agreement with the alleged fraudster.

(Defs.' Resp., ECF No. 147 at 17–18.)

To sustain an action for fraudulent misrepresentation, a plaintiff must prove:

> (1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation.

*Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 56–57 (2002) (citations omitted).

On the (defective) record before the court, Plaintiffs' own exhibits and statement of undisputed material facts contain inconsistences the court cannot resolve. For example, the declaration of John Cosco provides in part:

> The following statements were also made to Bluemar in late March 2020 or April 2020 prior to Bluemar placing its order for KN95 face masks with 3B Tech:
>
> > a. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar were KN95s.
> >
> > b. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar were FDA Certified.
> >
> > c. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar were CE Certified.
> >
> > d. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar were EU Certified.

>   e. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar met or exceeded applicable governmental standards.
>
>   f. Johnny Zhu told Bluemar that the face masks 3B Tech would sell to Bluemar met both FFP2 and KN95 standards.
>   g. Brett Barbour told Bluemar that a White House staff member on Mike Pence's team had spent 12+ hours in 3B Tech's Indiana warehouse to confirm the legitimacy of the product and factory.
>
>   h. Brett Barbour told Bluemar that the large, national supplier, SP Richards, had purchased millions of units of the KN95 masks 3B Tech was selling to Bluemar.
>
>   i. Johnny Zhu said he was responsible for any issues regarding the KN95 masks 3B Tech was selling in North America.
>
>   j. Johnny Zhu said he had an insurance policy that would cover any issues regarding the KN95 masks 3B Tech was selling to Bluemar.
>
> Bluemar relied on these representations of Johnny Zhu and Brett Barbour in deciding to purchase the advertised KN95 face masks from 3B Tech.

(Pls.' Mot., Exhibit 1, Decl. of John Cosco, ECF No. 141-4 ¶¶ 20–21.)  Cosco further attests that had Defendants not made such statements, Bluemar would not have purchased the masks.  *Id.* ¶¶ 22–26.

Similarly, in the statement of undisputed material facts, Plaintiffs assert: "Brett Barbour, Johnny Zhu, and 3B Tech made the above-cited false statements with the intention that Bluemar would rely on those statements and purchase the advertised KN95 face masks from 3B Tech," and direct the court's attention to exhibits 1–37.  (Pls.' Mot., Statement of Undisputed Material Facts, ECF No. 141-1 ¶ 31.)  Plaintiffs further assert as undisputed that "Brett Barbour, Johnny Zhu, and

11

3B Tech made the above cited statements intentionally, knowing they were false at the time they were made," and direct the court's attention to exhibits 1–37. *Id.* ¶ 32.

According to Cosco's declaration and the portions of the Motion referenced above, many of the statements on which Plaintiffs rely in support of the Motion occurred after Bluemar purchased the 250,000 face masks on April 15, 2020. (Pls.' Mot., Exhibits 18, 20, 24, 28, 31, 33, 35.)  This may be an unintended drafting error on Plaintiffs' part; or it may lay bare a material failure of the claim.  Regardless, summary judgment would be inappropriate even were the court to look past the Rule 56 technical failures.  In sum, there are genuine disputes of material fact, including at least: (1) whether and/or when Defendants made false representations regarding the face masks; (2) whether Defendants knew any such statements were false and made such statements for the purpose of defrauding Plaintiffs; (3) whether Plaintiffs relied on false representations by Defendants; and (4) whether Plaintiffs would have bought the face masks had Defendants not made such misrepresentations.  The Motion will be denied as to Count III.

　　　　2.　　　　**Breach of Contract (Counts IV and V)**

Plaintiffs move for summary judgment on their breach of contract claims on the basis that (1) Defendant 3B Tech contracted with Bluemar to supply KN95 masks and breached the contract by providing a non-conforming product; and (2) Defendant 3B Tech breached its agreement to refund Bluemar and AMA for the non-conforming product. (Pls.' Mot., ECF No. 141-1 at 12–17, 19–20.)  Defendants counter that there are genuine disputes of material fact as to whether the masks originally delivered were non-conforming and, even if they were non-conforming, "[w]hether . . . Bluemar and AMA are accountable for materially breaching the parties' Swap Agreement and also failing to abide by statutory obligations under the Uniform Commercial Code § 2-508(2), § 2-503(1), § 2-507(1), and § 2-510(3), Maryland Commercial Law Article, following

3B's tender, on August 6, 2020, of conforming substitute face masks." (Defs.' Resp., ECF No. 147 at 16.)

As an initial matter, the parties dispute whether the Maryland Uniform Commercial Code ("UCC") applies to the sale of the face masks by 3B Tech to Bluemar. Plaintiffs appear to contend that Maryland common law applies[3] and, therefore, "[t]o 'prevail on an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 596 (D. Md. 2018) (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001)). Defendants counter that the UCC applies to sales of goods such as the face masks. (ECF No. 147 at 19.) They are both right.

Under Maryland Law, a contract for a sale of goods (like the face masks) is governed by the UCC. MD. CODE ANN., COM. LAW §§ 2–101, *et seq.* Relevant here, the UCC provides in part: "[w]here any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery." *Id.* at § 2–508(1). Defendants assert that the parties' "Swap Agreement" (to swap the non-conforming masks for conforming ones) is effectively a UCC cure – but there is a genuine dispute of material fact whether 3B Tech

---

[3] When sitting in diversity jurisdiction, as the court does here, federal courts apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013). Plaintiffs filed this case in Maryland, so Maryland is the forum state. Thus, the court looks to Maryland law to determine which states law applies to the state causes of actions. *Bank of La*, 438 F. Supp. 3d at 442. For contract claims, Maryland adheres to the doctrine of *lexi loci contractus*, which provides that "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672 (1997), *cert. denied*, 348 Md. 205 (1997)). As to the breach of contract claims, Plaintiffs do not identify where the last act occurred and cite to Maryland, New Hampshire, and Indiana law noting that "[r]egardless of any conflicts of law analysis," the result is the same. (ECF No. 141-1 at 12.)

advised Bluemar of its intent to substitute a conforming tender. (Defs.' Mot., Exhibit 35, Pls.' Objections and Resps. to Defs.' Requests for Admissions, ECF No. 147-35; Defs.' Mot, Exhibit 26, Bluemar Emails, ECF No. 147-26.)

Plaintiffs' exhibits are also problematic and inconsistent as to damages. Plaintiffs assert that "Bluemar paid to 3B Tech $500,000.00 for the face masks plus $24,610.20 in shipping fees," and cite to various exhibits. (Pls.' Mot., Statement of Undisputed Material Facts, ECF No. 141-1 ¶ 37.) The Cosco declaration provides that Bluemar paid 3B Tech $500,000.00 for the masks and $24,610.20 in shipping fees (Cosco Decl. ¶¶ 29–30), but the Proforma Invoice indicates Bluemar paid $500,000.00 for the masks and $18,802.00 in shipping. (Pls.' Mot., Exhibit 5, Proforma Invoice, ECF No. 141-8.)

For all of these reasons, the Motion will be denied as to Counts IV and V.

IV.   **CONCLUSION**

For the reasons set forth herein Plaintiffs' Renewed Motion for Partial Summary Judgment (ECF No. 141), by separate order, is denied.

/S/
_____
Julie R. Rubin
United States District Judge

September 8, 2024