IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMA SYSTEMS, LLC,** *et al.*, | |
| *Plaintiffs/Counter-Defendants*, | |
| v. | Case No. 1:21-cv-01472-JRR |
| **3B TECH, INC.,** *et al.*, | |
| *Defendants/Counter-Plaintiff.* | |

**MEMORANDUM OPINION**

Pending before the court is Counter-Defendants AMA Systems, LLC ("AMA") and Bluemar Promotions, LLC's ("Bluemar") "Motion for Summary Judgment on 3B Tech, Inc.'s Counterclaim." (ECF No. 159, the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be denied.

**I.    RELEVANT PROCEDURAL BACKGROUND AND UNDISPUTED MATERIAL FACTS[1]**

AMA and Bluemar initiated this action against Defendants 3B Tech, Inc. ("3B"), Pro-Com Products, Inc., Salusen, Inc., Jian Qing "Johnny" Zhu, Brett Barbour, Michael Johnson, and "John Does 1-10" on June 11, 2021. (ECF No. 1.) After years of discovery, numerous motions for partial dismissal and summary judgment, and two amended complaints, on March 1, 2024, Defendants/Counter-Plaintiffs 3B, Pro-Com Products Inc., Salusen, Inc., Brett Barbour, Jian Qing Zhu, and Michael Johnson answered the Revised Second Amended Complaint (ECF No. 140) and

---

[1] The facts recited in this section are undisputed except where noted.

lodged a Counterclaim against AMA and Bluemar (ECF No. 146 at pp. 7–15).[2] Later, counsel for Counter-Plaintiffs clarified that the Counterclaim is advanced for the interests of 3B only. (ECF No. 150 at p. 5 and ECF No. 154; where appropriate, the court refers to 3B as "Counter-Plaintiff.") Given the lengthy history of this case, and the comprehensive factual background set forth in previous memoranda of this court, the below factual background sets forth the (except where noted) undisputed facts underpinning only the Counterclaim.

In April 2020, Bluemar submitted three purchase orders to 3B for KN95 face masks. The first order, dated April 6, was for 50,000 KN95 Face Masks. (ECF No. 140 ¶ 83; ECF No. 162 at p. 8 ¶ 1.) The second, dated April 15, was for 250,000 KN95 Face Masks. *Id*. The third, dated April 29, was for 500,000 KN 95 Face Masks. *Id*. In the purchase orders, Bluemar included the following: "FDA Certified: Certificate No. JF-FDA-0328-0116 CE Certified: Certificate No. 4Q200407M.SCTUU98." (ECF No. 140 ¶ 85; ECF No. 146 ¶ 16; *see also* ECF No. 159-3, purchase order of April 15, 2020.) The 3B sales order for Bluemar's April 15 purchase order states that the masks "meet FDA/CE." (ECF No. 159-4.) In their Motion, Counter-Defendants AMA and Bluemar assert that by inclusion of the notation "meet FDA/CE," 3B confirmed the masks were certified by the Food and Drug Administration ("FDA") and Conformité Européenne ("CE") as genuine KN95 respirator masks. (ECF No. 159 at p. 2 ¶ 2.)

The Revised Second Amended Complaint (ECF No. 140) alleges that after purchase and receipt of the face masks, Plaintiffs/Counter-Defendants became aware that the FDA had not issued a certification for the factory that manufactured the masks and that the masks were not CE certified. (ECF No. 140 ¶¶ 94, 96.) Defendants generally deny that the masks were uncertified or

---

[2] During a hearing held on January 6, 2023, and again by Order of September 9, 2024, the court acknowledged that Defendants' proposed counterclaim for breach of contract was compulsory, but granted Defendants leave to file same on grounds of fairness and a lack of prejudice to Plaintiffs. (ECF No. 154.)

that they fraudulently represented that the masks were certified. (*See* ECF No. 146 at p. 1, general denial of allegations in the Revised Second Amended Complaint (ECF No. 140) including those at ¶¶ 94, 96.)

After Bluemar informed 3B that it could not sell the masks Bluemar claimed were nonconforming, 3B "offered during a telephone call on June 24, 2020 to 'swap out' certified, authentic KN95 face masks listed on the FDA's White List" for 250,000 of the allegedly nonconforming masks. (ECF No. 140 ¶ 227; ECF No. 146 p. 6 at ¶ 40;[3] *see also* ECF No. 162-3, correspondence from Bluemar to Defendant Johnny Zhu stating that the proposed swap was an acceptable solution for "the 250k units, as long as there is a clear link between the physical inventory and the white listed manufacturer, along with KN95 test reports," and ECF No. 159-6, June 25, 2020 correspondence from Defendant Johnny Zhu to Bluemar stating: "It is whitelisted and that is the proposal. I will provide when I have them.") The parties refer to this agreement as the "Swap Agreement."

Following the Swap Agreement, Bluemar and 3B exchanged correspondence regarding the production and delivery timeline for the substitute masks. (ECF Nos. 162-7–162-12.) Bluemar additionally requested pictures of the new masks (ECF No. 162-13) and clarification regarding the factory manufacturing the new masks. (ECF No. 162-14.) In response, 3B sent Bluemar and AMA a screen shot of the FDA website Establishment Registration & Device Listing Page, listing the manufacturer, Guangdong Yidao Medical Technology Co. LTD, its registration number, and two product types: Disposable Protective Masks (Model: YD-001) and KN95 Protective Mask (Model: YD-002). (ECF No. 162-17.) AMA and Bluemar responded: "Thank you for the

---

[3] The FDA "White List" refers to a list of face masks, or filtering facepiece respirators, manufactured in China per FDA Emergency Use Authorization requirements. (ECF No. 140 ¶ 6; ECF No. 159-13.) Counter-Plaintiffs and Counter-Defendants attach screen shots of the FDA White List as exhibits. (ECF Nos. 159-13; 162-20.)

clarification on the factory. Can you please provide pictures of the stock (or even ship a box using our UPS account) so we can verify and with Ted's [of AMA] approval move forward with the swap?" (ECF No. 162-18.) The following day, 3B sent seven photos of boxes and masks including the label inside one of the packages identifying the manufacturer as Guangdong YiDao Medical Technology Co., Ltd, and the model as YD-002. (ECF No. 162-19.) The boxes and masks pictured are marked "KN95." *Id*.

After receiving the photos from 3B, Bluemar and AMA continued to correspond with 3B regarding the timeline for delivery of the substitute masks. (ECF Nos. 162-21–162-27.) On August 3, 2020, Bluemar asked 3B whether it was able to swap 100,000 masks that day and whether it knew the whereabouts of an additional 22 boxes of masks. (ECF Nos. 162-26, 162-27.) Three days later, AMA wrote to 3B: "As you did not comply with the delivery date(s) of the full 250k units of stock, among other reasons I expect a full refund of my money and for you to arrange the pickup of All goods in my possession." (ECF No. 162-28.) The parties submit that following this message, 3B did not deliver the Swap Agreement masks or refund Bluemar and AMA for the 250,000 allegedly non-conforming masks that were to be swapped, and Bluemar and AMA did not return the allegedly non-conforming masks. (ECF No. 162 ¶ 36, 37; ECF No. 140 ¶ 244; ECF No. 159-1 ¶ 16.)

On March 1, 2024, 3B brought the instant Counterclaim alleging that Bluemar and AMA breached the Swap Agreement by refusing to accept delivery of the "conforming substitute face masks tendered by 3B on August 6, 2020" and failing to return the original 250,000 face masks. (ECF No. 146  p. 13 ¶¶ 29, 31.) Bluemar and AMA moved for summary judgment on the Counterclaim on the grounds that 3B has adduced no evidence that the substitute face masks were, in fact, conforming. (ECF No. 159-1 at p. 2.)

4

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also*

*Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

Importantly, where "the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing—that is, pointing out to the … court—that there is an absence of evidence to support the nonmoving party's case.' If the moving party carries this initial burden, the burden then shifts to the nonmoving party, who must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)).

### III.  ANALYSIS

Counter-Defendants Bluemar and AMA assert that in order to prevail on its Counterclaim, 3B "bears the burden of proving that it tendered conforming goods." (ECF No. 159-1 at p. 2.) Counter-Defendants ask the court to enter summary judgment in their favor because, they urge, 3B "has not – and cannot – demonstrate that it substituted a 'conforming' tender to Bluemar." *Id*. This court is not persuaded that 3B is, in fact, required to prove that its shipment of substitute face masks—that AMA had not received at the time it demanded a refund—conformed in order to succeed on its Counterclaim. The court is additionally not persuaded that Counter-Defendants have met their burden to demonstrate (or point out) a lack of evidence to support Counter-Plaintiff's case. In other words, even assuming 3B bears the burden to show that its substitute face masks conformed in fact, there exists a triable issue of fact as to whether the substitute masks were

6

listed on the FDA's White List.  For these reasons, explained in full below, the Motion will be denied.

### A. Burden to Show Conformity

Counter-Defendants construe 3B's Counterclaim to proceed under section 2-508 of the Commercial Law Article of the Maryland Code.[4]  (ECF No. 159 at p. 7, asserting that "[t]o prevail on its Counterclaim, 3B Tech must demonstrate that it (i) tendered conforming goods to Bluemar or AMA as a cure under Section 2-508 . . . ; and (ii) that Bluemar or AMA wrongfully rejected 3B Tech's offer of goods that conformed to the parties' contract terms.")  Section 2-508 provides:

> (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.
>
> (2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

MD. CODE ANN., COM. LAW § 2-508.

The parties agree that Maryland law is unsettled as to whether a seller has the right to cure in "the context of revocation of acceptance." (ECF No. 159-1 at p. 1 n.1; ECF No. 162 at p. 2 n.2.) 3B urges, however, that while § 2-508 generally applies to the parties' relationship, the court need not reach the precise issue as to whether § 2-508 applies "in the context of revocation of acceptance" as AMA and Bluemar suggest, because § 2-508 is not the premise or basis of its claim. Instead, 3B asserts its Counterclaim is for breach of contract and that contract at issue is the parties' Swap Agreement, which "appended additional reciprocal contractual obligations to the original

---

[4] The parties refer to the Uniform Commercial Code or "UCC," acknowledging that Maryland's version of the UCC is codified within the Commercial Law Article of the Maryland Code.

7

purchase agreement, mooting the need for the Court to consider the issue in connection with the instant motion." (ECF No. 162 at p. 2 n.2.)

Importantly, Counter-Defendants fail to address the timing of their demand for a refund relative to 3B's tender of substitute goods, a material aspect of the cases on which they rely. Said differently, the cases Counter-Defendants cite are materially distinguishable from the record here. In the cases on which they rely, the buyers rejected substitute goods after they determined the goods were non-conforming. *See Sinco, Inc. v. Metro-North Commuter Railroad*, 133 F. Supp. 2d 308, 313 (S.D.N.Y. 2001) (granting summary judgment in buyer's favor where seller failed to tender a conforming good and proof of conformity to buyer); *Worldwide RV Sales & Service, Inc. v. Brooks*, 534 N.E.2d 1132, 1333 (Ind. 1989) (affirming summary judgment in buyer's favor where buyer rejected non-conforming substitute after inspecting same).[5] Here, Bluemar and AMA fail to offer admissible record evidence on which a reasonable conclusion could be drawn that they received, inspected, and/or determined that the offered substitute goods did not conform; rather, the undisputed factual record before the court is that they canceled for failure to deliver on time.

In its Counterclaim, 3B avers that under either § 2-508 or the Swap Agreement, its deadline to make a conforming delivery had not yet expired when Bluemar and AMA demanded a full refund and pickup of the goods in their possession for failure "to comply with the delivery date(s) of the full 250k units of stock." (ECF No. 146 at p. 12 ¶¶ 22, 23.) As reflected above, Counter-Defendants do not attempt to resolve or address this issue in their Motion.

Counter-Defendants cite *Sinco* to argue that "an offer to make conforming goods available, or an offer of potentially curative performance, without more is not sufficient to establish a cure

---

[5] Counter-Defendants also cite *Sunrise Foods Int'l Inc. v. Ryan Hinton Inc.*, No. 1:17-CV-00457-CWD, 2019 WL 3755499, at *6 (D. Idaho Aug. 8, 2019). There, the court found that the seller established there was no genuine dispute of material fact that the buyer breached the terms of an enforceable contract where the buyer refused to accept the seller's tender of conforming replacement goods on three separate occasions.

under UCC § 2-508." (ECF No. 159-1 at p. 8.) Here, however, the record supports a reasonable conclusion by a finder of fact that 3B offered the "more" that Sinco failed to provide. In *Sinco*, the Southern District of New York considered cross-motions for summary judgment by Sinco, the seller attempting to effect a cure, and Metro-North, the buyer. 133 F. Supp. 2d 308, 313 (S.D.N.Y. 2001). The court entered summary judgment in Metro-North's favor after finding that Sinco's proposed cure was inadequate. The court explained, a conforming tender "clearly entails *more than a mere offer*, but less than actual physical delivery." *Id*. at 314 (internal quotation marks omitted; emphasis in original). Sinco fatally "failed to put conforming goods and evidence of their reliability at Metro-North's disposition." *Id*. To preserve its rights under § 2-508 of the UCC, Sinco had to put a substitute good and "proof of its reliability at Metro-North's disposition, leaving it to Metro-North to accept the tender." *Id*.

Here, the undisputed material facts are that 3B agreed to replace the allegedly non-conforming masks with 250,000 new masks from a White List factory (ECF Nos. 140 ¶ 227; 146 p. 6 at ¶ 40; 162-3; 159-6), it ordered these masks (ECF No. 162-6), it sent Counter-Defendants proof of the factory's White List status and information regarding the product (ECF No. 162-19), and Counter-Defendants received these photos and proceeded to discuss details of the delivery of the substitute masks (ECF Nos. 162-21–162-27). The undisputed record further reflects that three days after discussing delivery options, Counter-Defendants sought a refund for failure to meet the delivery dates of the substitute masks. (ECF No. 162-28.)

Based on the undisputed record, 3B is not on par with Sinco; unlike Sinco, the undisputed record is that 3B placed proof of the reliability of the substitute masks at Counter-Defendants' disposition, and, unlike Metro-North, Counter-Defendants did not reject the tendered substitute for failure to conform or otherwise indicate that 3B's proof of the factory's White List status was

inadequate or incorrect. Accordingly, neither *Sinco* nor any other cited authority, leads this court to conclude that 3B has, at this stage, fatally omitted to provide evidence of an essential element to proceed with its Counterclaim. Counter-Defendants fail to demonstrate that no genuine dispute of material fact exists and their resultant entitlement to summary judgment.

### B. Triable Issue Exists Regarding Conformity

Even were this court persuaded that evidence that the substitute masks appeared on the FDA White List was necessary to 3B's CounterClaim, Counter-Defendants fail to show that no question of fact exists as to the White List status of the substitute masks.

Counter-Defendants assert "[t]here is no evidence in the record establishing the substitute face masks are genuine KN95 face masks." (ECF No. 159-1 at p. 4 ¶ 11.) Counter-Defendants several times offer the amorphous "See Record" in support of their contentions, and elsewhere cite specifically to their exhibits 1, 2, and 3. Exhibit 1 contains Bluemar's April 15, 2020 Purchase Order for 250,000 Salusen brand KN95 Face Masks including the required FDA and CE certification numbers. (ECF No. 159-3.) Exhibit 2 is 3B's Sales Order confirming the quantity of 250,000 item Salusen SFFP22 face masks KN95 and "meet FDA/CE." (ECF No. 159-4.) Exhibit 3 is the invoice for the April 15, 2020 order. (ECF No. 159-5.) Nothing in these three exhibits supports Counter-Defendants' claim of "no evidence" establishing that the face masks are genuine KN95 masks. The court struggles to discern how these three exhibits could support a finding of no "dispute of fact." As for general citations to "the Record," the Federal Rules of Civil Procedure require a "party asserting that a fact cannot be or is genuinely disputed" to cite "particular parts of materials in the record." FED. R. CIV. P. 56 (C)(1). Counter-Defendants' broad citation to "the Record" is inadequate.

Counter-Defendants next assert "[t]here is no evidence in the record establishing the substitute face masks are genuine FDA or CE Certified face masks, or that they met 'FDA/CE,' conforming to the terms of the parties' contract." (ECF No. 159-1 at p. 4 ¶ 12.)  Here again, Counter-Defendants offer the following support for their contention: "See Record and Exs. 1, 2, 3." *Id*.  Again, the court fails to see how these citations support Counter-Defendants' assertion as to the absence of a material dispute of fact on this issue.  In contrast, 3B includes emails between the parties appending (undisputed) pictures and screen shots from the FDA's public-facing website that, 3B alleges, show the substitute masks are KN95 masks from a factory listed on the White List.  (ECF No. 162 ¶¶ 19, 20, 21, 22 (citing ECF No. 162-17; 162-20).)

Finally, Counter-Defendants aver "[t]here is no evidence in the record establishing the substitute masks were on the FDA White List." (ECF No. 159 ¶ 13.)  For this proposition, Counter-Defendants again refer to the "Record" as well as their exhibit 11.  *Id*.  Exhibit 11 is the FDA White List.  (ECF No. 159-13; *see* Appendix of Exhibits, ECF No. 159-1.)  Guangdong Yidao Medical—the manufacturer of the substitute masks—appears on page 33 this exhibit.  *Id*. at p. 33.  Later, Counter-Defendants insist that "KN95 face masks manufactured by Guandong YiDao Medical Technology Co., Ltd. were not on the FDA White List . . . .  The FDA White List included only an FFP2 mask manufactured by Gaundong YiDao Medical, model YD-002, which is not a KN95 mask." (ECF No. 159 ¶¶ 8, 9.)

Counter-Defendants cite two sources for their assertion that it is undisputed that Guangdong Yidao Medical's YD-002 mask is not a KN95 mask: the declaration of John Cosco, founder and managing member of Bluemar (ECF No. 159-16), and documentation regarding Guangdong YiDao Medical Technology Co., Ltd.'s Model YD-002 conformity with European Union regulations.  (ECF No. 159-14.)  Mr. Cosco offers his testimony based on his personal

11

knowledge of Bluemar's agreements and in his capacity as its Managing Member; Mr. Cosco has not been offered as an expert in face masks (or, for that matter, FDA or CE regulations regarding same); and, in any event, he does he attest that the Model YD-002 is not a KN95 mask. (ECF No. 159-16 ¶¶ 4, 5, 15.)

In contrast, in its statement of undisputed material facts, 3B submits that it sent pictures of the boxes and masks "identif[ying] the product in the package as YD-002 face masks listed on the FDA website as associated with Guangdong Yidao Medical Technology Co., Ltd, and the masks as 'KN95.'" (ECF No. 162 at p. 11 ¶ 21.) In further support of this proposed undisputed fact, 3B submits a screen shot from the public-facing FDA website that lists "Respirator Surgical – KN95 Protection Mask Model: YD-002" under Guangdong Yidao Medical Technology Co. Ltd's name on the Establishment Registration & Device Listing page. (ECF No. 162-17.)

For the reasons set forth above, the court is not satisfied that Counter-Defendants have shown that there is no evidence in the record that the substitute face masks were genuine KN95 masks, were FDA or CE certified masks, or were listed on the FDA White List. Instead, triable issues exists on these material factual disputes relevant to resolution of the Counterclaim. Therefore, Counter-Defendants are not entitled to summary judgment on the Counterclaim.

IV. **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion (ECF No. 159) will denied.

August 12, 2025

/S/
_____
Julie R. Rubin
United States District Judge